**HARTFORD ACCIDENT & INDEMNITY CO., Plaintiff,**

v.

**PACIFIC EMPLOYERS INSURANCE COMPANY, et al., Defendant.**

Civ. A. No. 92–1557.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 26, 1994.

Jim C. Ezer, Boswell & Hallmark, Richard E. Griffin, Griffin & Laser, Houston, TX, for plaintiff Hartford Acc. & Indem. Co.

Randy Donato, Tucker Hendryx & Gascoyne, Javier Sanchez Martinez, Mattingly & Marsh, Houston, TX, for defendant Pac. Employers Ins. Co.

Sylvia Matthews Egner, Mayor Day Caldwell & Keeton, Houston, TX, for defendant Baylor College of Medicine.

Michael E. Warrick, Schmidt & Matthews, Houston, TX, for defendant Nat. Union Fire Ins. Co. of Pittsburgh, PA.

Fred V. Sutherland, Downs & Associates, Javier Sanchez Martinez, Mattingly & Marsh, Houston, TX, for cross-claimant Pac. Employers Ins. Co.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

HUGHES, District Judge.

1. *Introduction*

An insurer at the top of the excess insurance food chain seeks for a declaration that its coverage has yet to be reached. After a trial on the merits, the relative responsibili-

ties of the four insurance carriers have been sorted. All the excess insurance carriers have made some payments, but only one is suing for relief. The excess carrier that was legally responsible for the payments made by the plaintiff will reimburse the plaintiff.

## 2. *Background*

The Baylor College of Medicine is a teaching hospital. It attempted to furnish professional liability insurance for its staff and students from July 1, 1983, to July 1, 1984. Baylor created its own self-insurance policy and obtained three excess policies. The aggregate coverages of the four policies are:

| | |
|---|---|
| Baylor Self-Insurance: | $5 million. |
| Pacific Employers Insurance: | The top $3 million of Baylor's $5 million. |
| National Union Fire Insurance | $5 million after Baylor and Pacific's limit. |
| Hartford Accident & Indemnity: | $15 million after all other policies are exhausted. |

One type of payment that an insurance company can make is for the insurer's liabilities. These are the sums paid to the claimants against the policy holder in settlement. Those payments may be made either for settlements or against judgments. The aggregate amounts in the four policies limit the amount of liability payments. For example, once National Union pays $5 million to claimants against Baylor, it no longer is obliged to pay settlements in any more claims. Baylor is insured for a total of $25 million of settlements for the one-year period at issue.

Another type of payment that an insurance company may make is for the insured's expenses in making its settlements. The overwhelmingly largest expense is attorneys' fees. The Baylor plan states that the payment of expenses by an insurance company does not count towards the liability limits of its policy. For example, if National Union has paid $2 million in settlements and an additional $4 million in expenses in making those settlements, it still remains $3 million away from paying its $5 million.

The Baylor plan pays for both settlements and expenses. The other insurance are all excess policies that follow the form of the original plan. Follow-form policies extend the limits and operate under the rules of them. Unless there is an express exception

to the form of the primary insurance, the excess carrier must act according to the primary insurance policy's terms.

The carriers have made these settlements and expense payments.

| Carrier | Settlements | Expenses |
|---|---|---|
| Baylor | $2,003,750 | $1,010,431 |
| Pacific | $2,891,500 | $ 108,507 |
| National | $4,603,447 | $ 569,682 |
| Hartford | $2,848,080 | $1,012,847 |

## 3. *Claims.*

This case began with Hartford asking for a declaration that, since Pacific had not exhausted its $3 million limit by $108,500, Hartford's layer of insurance had not yet been reached. Over the past two years, it has become evident that none of the excess insurers had any idea about what amounts they had paid and what their own policies obliged them to pay. With much prodding, that has now been clarified.

Once the parties realized what they paid, they started to look at each other for reimbursements in a flurry of cross-claims; most of them have been dismissed at the request of the parties. What remains is Hartford's contention that, since Pacific has not exhausted its policy limits, Pacific owes Hartford $1,012,847 for all of its payments for expenses and $108,500 for liability that Pacific has yet to pay within its limits.

Pacific argues that Baylor's self-insurance plan is ambiguous and that the court must conclude that Baylor keeps the obligation to pay for defense costs through all layers of liability coverage. Pacific also asserts that, while its policy follows Baylor's form, it specifically excludes payment for expenses. If Pacific is correct on either point, Hartford remains responsible for its own expenses.

## 4. *Equitable Subrogation.*

There is no contract between Hartford and Pacific. Hartford may recover from Pacific only to the extent that it is equitably subrogated to the rights that Baylor College would have against Pacific. Conversely, defenses that Pacific has against Baylor are good against Hartford. *See American Centennial*

*Ins. Co. v. Canal Ins. Co.,* 843 S.W.2d 480 (Tex.1992).

### 5. *Baylor's Plan*

■ Pacific contends that Hartford has judicially admitted that the Baylor plan is ambiguous on the question of defense costs. Hartford has pleaded that it perceives three different ways that the Baylor plan can be interpreted. Pacific asserts that the evidence in the case is that Baylor drafted its own plan, and the law states that any ambiguities are to be resolved against the drafting party, which becomes Hartford.

■ This court is not bound by Hartford's confusion or invention. If the court concludes that the contract is unambiguous, then the parties' posturing is not binding on the court. An ambiguity in an insurance contract exists if the terms of the contract are subject to more than one reasonable interpretation. *See TEIA v. Lloyds,* 836 F.Supp. 398 (S.D.Tex.1993).

> The Program will pay, in addition to the applicable limits of liability:
>
> (a) All expenses incurred by the Program, all costs taxed against any Insured in any suit defended by the Program and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Program has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Program's liability thereon; and
>
> (b) Premiums on appeal bonds required in any such suit and premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability under the Plan.

Baylor College of Medicine Self Insurance Plan, ¶ 3 at 8 (July 2, 1979). This is the only mention of the plan's responsibility to pay expenses. No provision in the plan suggests that Baylor retains the obligation to pay expenses once the plan's settlement limits have been reached. An excess follow-form policy has the same obligation to pay expenses as the Baylor plan, unless it includes a statement to the contrary.

Pacific's argument must be that, because the Baylor provision does not expressly state that expenses will *not* be paid after the limit of settlement liability has been reached, a reasonable interpretation of the policy is that Baylor is required to pay expenses even after it no longer has settlement liability. This is not reasonable.

■ The plan does not refer to excess insurance. Insurance plans normally pay expenses only while the provided is liable to pay settlements. Only an express statement to the contrary can extend liability to expenses in achieving settlements that the insurer has no liability for. Pacific would have this court interpret the plan to mean that Baylor will, for example, pay the expenses of a doctor defending herself in court even after the plan has no coverage remaining to pay a judgment against the doctor. It is not reasonable to read that extension of liability to the plan where it is not mentioned.

### 6. *Pacific's Policy.*

■ Pacific argues that its policy is solely an indemnity policy and specifically repudiates payment of expenses. Before turning to the language of the policy, the court notes that Pacific proffered evidence that the premium, $200,000, for its $3 million worth of coverage was far too low if its policy included payment for expenses. Pacific's expert testified that the cost of an excess policy that paid expenses as well as settlements would have been at least $1 million. No comparative evidence was presented: no rate sheets, no underwriting schedules, or third-party prices at the time. That may be true, but it is irrelevant. What the policy says, not what it should have said, is the question.

Pacific wants the court to treat the premium as evidence of the type of policy that it issued. Just as the court will not treat as evidence the letter that Pacific's agent, Montgomery and Collins, sent to Baylor informing it that Pacific agreed that the policy covered expenses, the court will not interpret the text based on Pacific's current view of proper pricing. It also will not treat as evidence Pacific's letter to Baylor one-month later retracting the Montgomery and Collins admission. The court will decide what the policy

itself states, not what the parties thought it did at one time or another.

Along the same line, both sides paint the other's payment of expenses as proof that they accepted the duty to pay expenses. These payments are, in fact, evidence of the skill of Bill Brooks, Baylor's claims manager, who brow-beat the insurers into paying something, even though they all now contend that they had no obligation.

### 7. *The Text.*

The insurance afforded by the certificate shall follow that of the primary insurance except:

> (1) anything in this certificate or the primary insurance to the contrary notwithstanding, PEIC shall not be obligated to assume charge of the settlement or defense of any claim or suit brought or preceding instituted against the Insured, but PEIC shall have the right and be given the opportunity to associate with the Insured in the defense or control of any claim, suit or proceeding which appears reasonably likely to involve PEIC, in which event the insured and PEIC shall cooperate in all things in the defense or control of such claim, suit or proceeding, but no obligation shall be incurred on behalf of PEIC without its consent being first obtained, however, in the event that the amount of the excess loss becomes certain either through trial court judgment or agreement among the Insured, the claimant and PEIC, then, the Insured may pay the amount of excess loss to the claimant to effect settlement and, upon submission of due proof thereof, PEIC will indemnify the Insured for such payment, *or, PEIC will, upon request of the Insured, pay such amount to the claimant on behalf of the Insured;* (2) the insurance afforded by this certificate shall not apply to any expenses for which insurance is provided in the primary insurance; (3) where amended by endorsement attached hereto.

Pacific Employers Insurance Company, Certificate of Excess Insurance, ¶ C (July 1, 1983). An amendment written at the same time that the policy issued deleted the portion in italics. With less focus on legalese and a little more on English, Pacific's policy says:

> The insurance shall follow the primary insurance except:
>
> (1) PEIC shall not be obligated to assume the defense of any claim against the Insured, but PEIC shall have the right to associate with the Insured in the defense of any claim which appears reasonably likely to involve PEIC. The insured and PEIC shall cooperate in the defense, but no obligation shall be incurred on behalf of PEIC without its consent. In the event that the amount of the excess loss becomes certain among the Insured, the claimant and PEIC, the Insured may pay the excess loss to the claimant and PEIC will indemnify the Insured; (2) the insurance shall not apply to any expenses for which insurance is provided in the primary insurance.

Certificate of Excess Insurance, ¶ C (ellipses omitted).

■ Draftsmanship that fits all of paragraph C into one sentence is not admired. As evidence of its contention that the policy was merely an indemnity policy, Pacific points to the explicit statement that "Pacific shall not be obligated to assume charge of the settlement or defense of any claim or suit" and the statement that the "insurance afforded by the certificate shall not apply to any expenses for which insurance is provided." The court disagrees.

The best interpretation of the first statement is that Pacific is not obligated to pay for expenses for the first $2 million of claims that Baylor is obliged to pay. The language after that statement gives Pacific the right to intercede in those claims under $2 million because the handling of those may affect Pacific's obligations. The paragraph is an intercession clause, allowing Pacific to protect its interests. It is not a repudiation of payment for expenses. The exception to following the form of the primary coverage was to give the excess carrier more control, not to excuse it from payment of expenses.

This is reinforced because the second statement that Pacific relies on merely states

that Pacific does not have to pay the expenses for which Baylor is obligated while its initial limits have not been met. In fact, if the Pacific policy was an indemnity policy that had no responsibility for expenses whatsoever, then this clause would be redundant since it would never have to pay expenses.

Once the surplus verbiage of the paragraph is eliminated, the only reasonable interpretation of the text is that no exclusion for expenses appears. Even if Pacific's interpretation were reasonable, in this case Pacific is the drafter of the policy, and Pacific must accept Baylor's alternative reasonable interpretation. The doctrine of *contra proferentum* applies to Hartford's benefit. Pacific is liable to Hartford for expenses it should have paid.

### 8. *Damages.*

■ Pacific asserts three defenses to Hartford's claim for reimbursement for the full amount of its payments for expenses. The first is that Pacific is responsible only for the expenses Hartford paid before the date that Pacific would have reached its $3 million limit in settlement payments. It is undisputed that that date was August 1, 1990, and that Hartford had paid $628,096 for expenses to that point. The court agrees with the logic of Pacific's argument, and Hartford's recovery for expenses will be limited to that amount.

■ Pacific further asserts that, since the payments National made for expenses were made before Baylor had paid $2 million in settlements, those payments were voluntary payments by National, and Pacific is entitled to a credit for them. Pacific fails to give the court any reasons it should benefit from National's free gift to Baylor. That those payments inured to the benefit of Baylor does not mean that Pacific is liable to Baylor for proper expense charges paid by Hartford. Baylor receives donations all the time. None of them affect Pacific's liability.

■ Finally, Pacific asserts that it should get a credit for its payment of $108,507 to Baylor for expenses because Hartford has failed to present evidence of when those expenses were incurred. Pacific is not entitled

to the credit. Hartford is entitled to the full amount of the expense payments that it made until Pacific's liability payments would have been exhausted if it had paid. Hartford will recover from Pacific $628,096 in reimbursement for expense payments, as well as the $108,500 that Pacific failed to pay in settlement payments.

### 9. *Prejudgment Interest.*

■ The question of equitable subrogation involves underlying issues sounding in both contract and tort. Because this case raises issues arising principally from contract rather than tort, the statutory interest rate applies. *See, e.g., Fidelity and Cas. Co. v. Central Bank of Houston,* 672 S.W.2d 641, 649 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

The statutory simple interest rate is 6%. Tex.Civ.Stat. art. 5069–1.03. Hartford argues that the statutory simple rate applies only when damages can be readily ascertained from the face of the contract. If damages cannot be readily ascertainable from the contracts, the statutory simple rate does not apply. *Perry Roofing C. v. Olcott,* 744 S.W.2d 929 (Tex.1988). Hartford confuses the parties' inability to interpret the provisions of the contracts with the contracts' effect on damages. Once the contracts were properly interpreted, the damages were precise. The statutory simple rate applies.

### 10. *Baylor.*

At the trial Pacific orally moved the court to reinstate Baylor as a defendant. Both Hartford and Pacific voluntarily dismissed their claims against Baylor. The judgment of the court does not require Baylor to be involved further. Pacific's motion will be denied.

### 11. *Conclusion.*

All of the people remotely related to this lawsuit would have been served by better draftsmanship and more thorough claims administration. Once the contracts are thoroughly examined, however, the result is clear. Hartford will recover from Pacific.

**166**

ORDER

1. Hartford will recover from Pacific:

   A. $628,096 in reimbursement for expense payments;

   B. $108,500 that Pacific failed to pay in settlement payments;

   C. Prejudgment interest at 6%;

   D. Postjudgment interest; and

   E. Attorney's fees.

2. By September 12, 1994, the parties shall file an agreed amount for attorney's fees. If they are unable to agree, by the same date each party shall file a brief statement of its position on the proper amount of the fees. Hartford will attach evidence of its fees.

3. The court will review the attorney's fees issue on the papers and issue a final judgment.

4. Pacific's oral motion to reinstate Baylor as a defendant is denied.