942 So.2d 1204 (2006)
Lateea TOSTON, as Curatrix of Syvella Toston, Plaintiff-Appellant
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF LOUISIANA, Defendant-Appellee.
No. 41,567-CA.
Court of Appeal of Louisiana, Second Circuit.
November 3, 2006.
Deal & Wheeler, by Philip T. Deal, Lewis O. Unglesby, Baton Rouge, for Appellant.
Gieger, Laborde & Laperouse, L.L.C., by Robert I. Siegel, Krystena L. Harper, for Appellee.
Before CARAWAY, DREW and MOORE, JJ.
MOORE, J.
Lateea Toston, the curatrix of Syvella Toston, appeals a judgment denying her demand for the Louisiana Department of Transportation and Development *1205 ("DOTD")'s excess insurer, National Union Fire Insurance Company of Louisiana ("National Union"), to pay prejudgment interest on DOTD's self-retained limit of liability. We affirm.

Procedural Background
Syvella Toston was the passenger in a Mercury Cougar that was involved in a serious "T" intersection collision with a Ford truck in East Carroll Parish in April 1997. Syvella was severely and catastrophically injured; her mother, Annette Toston, filed suit against the drivers of both vehicles, their insurers, the East Carroll Parish Police Jury and DOTD. After all other parties were dismissed, Annette Toston proceeded to jury trial against DOTD. The jury found DOTD solely at fault for failing to remedy sight obstructions at the intersection, and awarded damages of over $11 million. Applying the statutory damage caps, the district court reduced the award to slightly over $7.1 million.
On appeal, this court reversed, ascribing all fault to the drunk driver of the Ford truck. Toston v. Pardon, 36,880 (La.App. 2 Cir. 5/14/03), 847 So.2d 119. On application for certiorari, however, the supreme court found that the "T" intersection posed an unreasonable risk of harm and assessed DOTD with 80% fault. Toston v. Pardon, XXXX-XXXX (La.4/23/04), 874 So.2d 791. It rendered judgment effectively fixing DOTD's share of the judgment at $5,502,372.00.
DOTD was self-insured under a commercial general liability policy written by the State of Louisiana Office of Risk Management ("ORM") for $5 million per occurrence. ORM's coverage is referred to as the "self-retained limit." DOTD had an excess liability policy with National Union for amounts over the $5 million self-retained limit, with a maximum of $20 million. National Union intervened in DOTD's appeal.
In June 2002, while the matter was still on appeal, DOTD and Annette Toston executed a receipt and release whereby DOTD paid her the $5 million self-retained limit (allocated as $4.75 million for Syvella and $250,000 for Syvella's minor child). As part of the agreement, Annette Toston waived her right to pursue further recovery against DOTD but reserved her rights against DOTD to the extent necessary to pursue her claim against National Union for the excess. DOTD assigned to Annette Toston all its rights, claims and causes of action against National Union.
In July 2004, Lateea Toston (the new curatrix after the death of Annette Toston) filed the instant suit against National Union. She alleged that the interest due on the $5.5 million award was nearly $1.4 million, and that applying the $5 million settlement to the interest first, she calculated she was still due $2,141,422.26, which was National Union's responsibility.
In September 2004, National Union paid the plaintiff $1,101,394.31, representing the excess judgment of $502,372.00 plus interest on that amount only. National Union maintained that it did not owe interest on the self-retained limit, and had thus completely discharged its obligation under the excess policy. National Union also argued that ORM customarily paid interest and costs that exceeded the self-retained limit, but that the plaintiff had waived this by the receipt and release executed by Annette Toston.
At a bench trial in January 2006, the parties submitted the matter on exhibits and arguments, principally the two policies, *1206 ORM's Commercial General Liability Declarations and National Union's Straight Excess Following Form Declarations, and the receipt and release. In oral reasons, the court found that the ORM policy obligated ORM to pay up to $5 million plus prejudgment interest, and that payment of this interest would not reduce the limits of insurance. Because prejudgment interest was an obligation of DOTD's, it was unaffected by the receipt and release, which assigned to the plaintiff only DOTD's rights, claims and causes of action against National Union. Finally, the court found that National Union's policy obligated it to pay interest only on its own portion of the final judgment. The court rendered judgment dismissing the plaintiff's claim for interest on the self-retained limit.

The Parties' Contentions
Lateea Toston has appealed, raising one assignment of error:
Appellant contends that the Trial Court erred in concluding that DOTD owed $5 million plus legal interest rather than $5 million including legal interest and in failing to conclude that National Union owed Appellant the amount of the previous judgment in question in excess of $4,750,000 ($250,000 paid to a co-plaintiff) including interest rather than the amount of the principal of the previous judgment in excess of $4,750,000 plus legal interest.
She first contends that because the case was tried solely on documentary evidence, appellate review should be de novo. She also argues that ORM's policy is not at issue in the case, only National Union's policy.
Factually, she contends that of the $5 million receipt and release, only $4.75 million was earmarked for Syvella Toston, so that is the base figure at which National Union's excess obligation begins. She calculates that the excess due is $1,337,030.35.[1]
She argues that the general coverage statement obligated National Union to pay the state's "ultimate net loss," and that Endorsement No. 11 obligated it to pay interest that exceeded the self-retained limit. Further, DOTD's ultimate net loss included the interest it would have paid on the $5 million retained limit, and National Union must pay that interest on DOTD's behalf. She concludes that Endorsement No. 11 clearly obligates National Union to pay the state's interest, and suggests that if the provision is ambiguous it should be construed to find coverage. In support she cites the rule of plain construction, La. R.S. 22:654 and Mayo v. State Farm, XXXX-XXXX (La.2/25/04), 869 So.2d 96.
National Union responds that DOTD, through ORM, was responsible for the interest on its own self-retained limit, according to the ORM policy's Supplementary Payments  Coverage A and B, ¶ 6. In short, it contends the state was liable for prejudgment interest on the $5 million it paid to Annette Toston. It cites numerous cases involving self-insured political entities for the proposition that each insurer is responsible for its own layer of coverage. Moon v. City of Baton Rouge, 522 So.2d 117 (La.App. 1 Cir.1987), writs denied, 523 So.2d 1319, 523 So.2d 1320, 523 So.2d 1327 (1988); Doty v. Central Mutual Ins. Co., 186 So.2d 328 (La.App. 3 Cir.), writ denied, 249 La. 486, 187 So.2d 451 (1966); *1207 Glazer v. Louisiana Trailer Sales Inc., 313 So.2d 266 (La.App. 4 Cir.), writ not cons., 318 So.2d 47 (1975); McGowan v. Sewerage & Water Bd. of New Orleans, 555 So.2d 472 (La.App. 4 Cir.1989); O'Donnell v. Fidelity General Ins. Co., 344 So.2d 91 (La.App. 2 Cir.1977); NOPSI v. Southern American Ins. Co., 1990 WL 103679 (E.D.La.7/12/90). National Union concludes that its policy is unambiguous and does not provide for the payment of prejudgment interest on DOTD's self-retained limit.

Discussion
At the outset, we must reject Ms. Toston's contention that the ORM policy is not at issue in the case. National Union's policy is clearly labeled "straight excess following form liability declarations." The "follow form" designation means that it follows the conditions and agreements of an underlying policy. Rivere v. Heroman, 96-1568 (La.App. 4 Cir. 2/5/97), 688 So.2d 1293. Unless there is an express exception to the form of the underlying insurance, the excess carrier in a follow form policy must act according to the underlying insurance policy's terms. Hartford Accident & Indem. Co. v. Pacific Employers Ins. Co., 862 F.Supp. 160 (S.D.Texas 1994). The ORM policy is an integral part of the state's insurance scheme and is relevant to the case.
The pertinent portion of the ORM policy is under the heading "Supplementary Payments  Coverage A and B," whereby ORM agreed to pay:
6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer. * * *
These payments will not reduce the limits of insurance.
This provision clearly imposes on the state, through ORM, the obligation to pay prejudgment interest on its own portion of the judgment without reduction of the limit of insurance.
Also of crucial importance to the case is the receipt and release executed by Annette Toston. By this document, she accepted from the state an even $5 million, without interest. They further provided:
[P]ursuant to this Agreement, Plaintiff * * * will collect the underlying self-insured limits of the State of Louisiana in the amount of Five Million and no/100 ($5,000,000) Dollars, reserving Plaintiff's rights against the State of Louisiana, but only to the extent necessary to preserve Plaintiff's claims against National Union Insurance Company of Louisiana, the excess insurance carrier for the State of Louisiana, and that any additional sums to which Plaintiff may ultimately be entitled will be collected only from National Union Fire Insurance Company of Louisiana, and not from the State of Louisiana, directly or indirectly. To the extent necessary to effectuate this Agreement, the State of Louisiana will assign to Plaintiff all of its rights, claims and causes of action against National Union Fire Insurance Company of Louisiana.

(Emphasis added)
The parties to the receipt and release apparently believed that the state, through ORM, had the right to recover prejudgment interest on the self-retained limit from National Union; however, for the reasons already discussed, this portion of the prejudgment interest was the obligation of ORM. Before she executed the *1208 receipt and release, Annette Toston had the right to demand this interest from ORM; after the receipt and release, she owned by assignment all rights and claims of ORM. In effect, she received the right to demand prejudgment interest from herself. When the qualities of obligee and obligor are united in the same person, the obligation is extinguished by confusion. La. C.C. art.1903; A & M Pest Control Serv. v. Fejta Const. Co., 338 So.2d 946 (La.App. 4 Cir.1976). The district court was not plainly wrong to find that the assignment of claims "would not constitute an assignment of a claim for interest on the five million dollars because that was an obligation that DOTD had[.]"
In addition, we find that National Union's policy provides that the underlying insurer will be responsible for prejudgment interest on its own self-retained limits. Endorsement No. 11 provides, in pertinent part:
We will pay on behalf of the insured that portion of the ultimate net loss in excess of the retained limit as hereinafter defined, which the insured [DOTD] will become legally obligated to pay as compensatory damages because of personal injury or property damage liability, caused by an occurrence to which this insurance applies * * *. The sum total which the insured becomes obligated to pay by reason of personal injury or property damage claims, either through adjudication or compromise, and shall also include * * * interest * * *.
Although this provision could have been more artfully drawn, its meaning is reasonably plain: DOTD was responsible for its self-retained limit plus interest in accordance with the ORM policy, and National Union was responsible only for damages that exceeded that total. The district court did not err in so finding.
National Union correctly shows that the scheme of the ORM and National Union policies is consistent with the jurisprudence. As the court summarized in Moon v. City of Baton Rouge, supra:
LSA-R.S. 13:4203 provides for the payment of legal interest from the date of judicial damage on all judgment, sounding in damages "ex delictu." Pursuant to this statute, the courts of this state have, on numerous occasions, held insurers liable for interest and costs which exceed the policy limits. * * * The jurisprudence has interpreted R.S. 13:4203 to require the insurer, in the event of judgment, to pay, in addition to policy limits, judicial interest on such policy limits from the date of judicial demand. This applies to primary as well as excess insurers, making each liable for the interest attributable to their proportionate share of the total judgment. The fact that an excess policy is in effect does not alter the legal duty of a primary insurer to pay its prorata share of interest. * * * Therefore, we find that the trial court correctly allocated the payment of pre-judgment interest according to each defendant's proportionate share of the total judgment.
(Emphasis added; citations omitted)
The federal district court in NOPSI v. Southern American Ins. Co., supra, analyzed Moon and other Louisiana cases, and extracted the following rule:
Where an adverse judgment is rendered against an insured in a tort action, then the insurer, absent an agreement to the contrary, is not liable to the insured for any prejudgment or postjudgment interest on the portion of the principal amount that does not exceed the insured's self-retained limit relative to that particular insurer.
*1209 (Emphasis added)
In the instant case, there is no "agreement to the contrary": ORM agreed to pay its self-retained limit and any prejudgment interest thereon; National Union agreed to pay any excess over that total, up to $20 million. Under these policies, each insurer was responsible for interest on its own layer of coverage. The district court was not plainly wrong to reach this conclusion.
Finally, the parties stipulated that National Union paid the principal judgment in excess of $5 million, including interest owing on that amount on September 15, 2004. This completely discharged National Union's obligations. The assignment of error lacks merit.

Conclusion
For the reasons expressed, the judgment is affirmed. All costs are to be paid by Lateea Toston, curatrix of Syvella Toston.
AFFIRMED.
NOTES
[1] By applying Ms. Toston's method of calculation and the dollar values supplied, this court would find the "bottom line" or excess due figure to be only $1,090,027.95, but the arithmetic discrepancy is not important to this opinion.