984 So.2d 91 (2008)
STATE of Louisiana through the DIVISION OF ADMINISTRATION, OFFICE OF RISK MANAGEMENT
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF LOUISIANA and Aon Risk Services of Louisiana, Inc.
No. 2007 CA 1134.
Court of Appeal of Louisiana, First Circuit.
February 8, 2008.
Writ Denied April 25, 2008.
John Murrill and W. Shelby McKenzie, Baton Rouge, LA, for Plaintiff/Appellant, State of Louisiana.
Jeanette M. Engeron, Gus A. Fritchie, III, New Orleans, LA, for Defendant/Appellee, Aon Risk Services, Inc. of Louisiana.
Robert I. Siegel, Krystena L. Harper, New Orleans, LA, for Defendant, National Union Fire Insurance Company of Louisiana.
Before WHIPPLE, GUIDRY and HUGHES, JJ.
WHIPPLE, J.
This is an appeal by the State of Louisiana ("the State") from the trial, court's *92 judgment granting the motion for summary judgment filed by defendant Aon Risk Services of Louisiana, Inc. ("Aon") and dismissing the State's claims against it. For the following reasons, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
In 1989, the State issued an Invitation for Bids, seeking excess liability insurance coverage for the State. Alexander and Alexander, Inc. ("Alexander") submitted a bid, which was accepted by the State. Representatives of the State and Alexander signed the Invitation for Bids, agreeing that Alexander would "provide the insurance coverage and related services, at the prices quoted, pursuant to the requirements of this document." The document further provided that upon being signed by an authorized official of the State, a binding contract existed between Alexander and the State.
Pursuant to this contract, Alexander then procured excess liability coverage for the State through National Union Fire Insurance Company of Pittsburgh, PA ("National Union").[1] The relevant coverage provided for in the policy was $20,000,000.00 coverage in excess of $5,000,000.00 for road and bridge liability. The policy was subsequently renewed through July 1, 1992.
In 1992, Harry Odom filed suit in the Fourteenth Judicial District Court on behalf of Michael Williams against the City of Lake Charles and others, arising out of a September 18, 1991 automobile accident in Lake Charles, in which Williams was seriously injured. In March 1993, Odom filed an amending petition, naming the State of Louisiana, through the Department of Transportation and Development, as an additional defendant.
Thereafter, by letter dated August 19, 1998, the State notified Alexander of the possibility of an excess claim under the National Union policy, stemming from the Odom litigation. However, unbeknownst to the State, Alexander failed to relay the notification of the Odom litigation to National Union, Subsequently, by letter dated January 5, 2000, the State again notified Alexander about the Odom litigation, informing Alexander that trial in the matter was set for January 18, 2000. Alexander again, unbeknownst to the State, failed to relay this notification to National Union.
Following the January 2000 trial, the trial court found the State to be 60% at fault and assessed damages in the following amounts: $1,026,440.13 for past medical expenses; $2,230,207.23 for future medical expenses; $426,480.02 for past lost wages; $1,331,148.25 for future lost wages; $4,000,000.00 for past, present, and future physical and mental pain, suffering, and disability; and $200,000.00 to each of Williams's two minor children for loss of consortium. Thus, by judgment dated January 24, 2000, the State was found liable in the Odom litigation for an amount in excess of $5,600,000.00.
Both the plaintiffs and the State appealed the judgment, and by opinion rendered on January 31, 2001, the Third Circuit Court of Appeal increased the future medical expenses award and awarded legal interest from the date of judicial demand, thereby increasing the State's purported liability to approximately $7,900,000.00. Odom v. City of Lake Charles, 00-01050 (La.App. 3rd Cir.1/31/01), 790 So.2d 51, writ denied, XXXX-XXXX (La.6/22/01), 794 So.2d 787.
*93 Apparently, by phone conversation on May 16, 2000, the State informed Aon Risk Services ("Aon"), the successor of Alexander, of the adverse judgment. By letter dated June 1, 2000, Aon then for the first time notified AIG Technical Services, Inc. ("AIG"), the claims administrator for National Union, of the Odom litigation, the judgment against the State, and the resulting excess claim being made by the State under the National Union excess liability policy.
Thereafter, by letter dated August 18, 2001, the State submitted a written demand to AIG for payment in the amount of $2,930,723.96, pursuant to the National Union excess policy. However, by letter dated April 23, 2002, AIG notified the State that National Union was denying coverage for the claim based on the State's failure to give National Union "timely and adequate notice."
The State then instituted this suit against National Union and Aon. The State contended that National Union had arbitrarily and capriciously denied its claim. Alternatively, the State contended that any failure by the State to give sufficient notice to National Union was due to the fault of Alexander (and, thus, Aon, as Alexander's successor) in failing to notify National Union of the information that had been communicated to it by the State. Thus, the State sought judgment against National Union or, alternatively, against Aon in the event that National Union was found not liable, in the amount of $2,930,723.96, with interest, penalties, attorney's fees, and costs.
Aon then filed a motion for summary judgment, contending that any claim the State may have had against it was perempted by LSA-R.S. 9:5606, the statute setting forth peremptive periods for claims against insurance agents, brokers, solicitors, or similar licensees for damages arising out of an engagement to provide insurance services. Following a hearing on the motion, the trial court rendered judgment on March 19, 2007, granting the motion for summary judgment and dismissing the State's claims against Aon with prejudice.
From this judgment, the State appeals, contending that the trial court erred in granting Aon's motion for summary judgment: (1) where the 1998 and 2000 notices given by the State to Alexander were separate and distinct acts giving rise to separate causes of action and, thus, the State's claim was not perempted; (2) where the existence and extent of any prejudice to National Union arising out of Alexander's failure to relay the 1998 and 2000 notices are disputed issues of material fact precluding summary judgment; and (3) where the State's claim against Aon is not an "action for damages against any insurance agent . . . arising out of an engagement to provide insurance services" within the meaning of LSA-R.S. 9:5606 and, accordingly, the peremptive periods do not apply.

SUMMARY JUDGMENT
A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, and the procedure is favored. LSA-C.C.P. art. 966(A)(2).
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Because it is the applicable *94 substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Keller v. Case, 99-0424 (La.App. 1st Cir.3/31/00), 757 So.2d 920, 922, writ denied, XXXX-XXXX (La.9/29/00), 770 So.2d 354.

DISCUSSION
Louisiana Revised Statute 9:5606, which governs actions against insurance agents and brokers[2], provides, in pertinent part, as follows:
A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year form the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
* * *
D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
Louisiana Civil Code article 3458 defines peremption as "a period of time fixed by law for the existence of a right." Unless timely exercised, a right subject to a peremptive period is extinguished upon the expiration of the peremptive period. LSA-C.C. art. 3458.
As stated in subsection D of LSA-R.S. 9:5606, peremption may not be renounced, interrupted, or suspended. See also LSA-C.C. art. 3461. Moreover, because the time limitation set forth in LSA-R.S. 9:5606 is peremptive, the continuing tort doctrine, which is a suspensive principle, is inapplicable to claims governed by this statute. Bel v. State Farm Mutual Automobile Insurance Co., XXXX-XXXX (La.App. 1st Cir.2/14/03), 845 So.2d 377, 382, writ denied, XXXX-XXXX (La.5/30/03), 845 So.2d 1057. As such, if a claim is not filed within three years of the alleged act, it is extinguished by peremption, regardless of whether or not it was filed within one year from the date of discovery. Bel, 845 So.2d at 380.
According to LSA-R.S. 9:5606(A), the three-year peremptive period commences on the date of the alleged act, omission, or neglect. In the instant case, the State sent two separate letters to Alexander, informing Alexander of the existence and status of the Odom litigation, one in 1998 and one in 2000. The State contends that on each of these two occasions, Alexander committed a separate act or omission, i.e., the failure to then notify National Union of the Odom litigation. Thus, the State contends that each of these omissions or negligent *95 acts by Alexander constituted a new and distinct tort. Thus, it argues that, because suit was filed within one year of its discovery of Alexander's failure to relay notification of the claim to National Union and within three years of Alexander's last failure to relay such notification in 2000, the suit against Aon (as Alexander's successor) is not perempted.[3]
In order for these alleged negligent acts or omissions to be the basis of a separate tort, the complained-of conduct must consist of separate and distinct acts, each of which gives rise to immediately apparent damages. See Bustamento v. Tucker, 607 So.2d 532, 540 (La.1992); Bel, 845 So.2d at 382. The question of whether alleged acts or omissions of an insurance agent constitute separate torts has arisen in the context of policy renewals, where the failure to procure certain coverage is repeated with each subsequent renewal. In this context, the courts have concluded that where there is no contact between the agent and the insured subsequent to issuance of the original policy, the mere renewal of a policy will not constitute a separate tort. However, the agent may commit a separate tort subsequent to the original issuance of the policy where the agent subsequently discusses coverage with the client prior to or at the time of renewal.
In Bel, plaintiffs sued their insurance agent, claiming that he was negligent in advising them that they did not need UM coverage under a personal liability umbrella policy. Bel, 845 So.2d at 380-381. Plaintiffs filed suit against their agent in 1998. However, plaintiffs had last signed a form rejecting UM coverage in 1994. Nonetheless, in an attempt to avoid the effects of LSA-R.S. 9:5606, plaintiffs argued that each time the policy was renewed, their agent misrepresented the nature of their coverage, which constituted a new and distinct tort. Bel, 845 So.2d at 381.
This court rejected plaintiffs' argument, concluding that the renewals of the policy were simply a continuation of the effects of the original wrongful act and not separate and distinct torts. In reaching this conclusion, the court specifically noted that after the initial rejections were signed, the rejection of UM coverage under the policy remained effective for the life of the policy. No additional rejection was necessary when a renewal was issued nor had the insureds discussed their coverage with the agent subsequent to signing the original UM rejection forms in 1994. Thus, the court concluded that there was no occasion for the agent to misrepresent the nature of plaintiffs' coverage or the implications of not having UM coverage after the initial rejection forms were signed. Bel, 845 So.2d at 382.
Similarly, in Biggers v. Allstate Insurance Company, 04-282 (La.App. 5th Cir. 10/26/04), 886 So.2d 1179, 1180, the plaintiffs purchased homeowners insurance in 1995, at which time they requested coverage for their jewelry and silverware. In 2002, their home was burglarized, and their jewelry and silverware were stolen. Plaintiffs then discovered that their agent had not, as requested, obtained the additional coverage for the jewelry and silverware. However, when plaintiffs sued their agent for negligence, the agent filed an *96 exception, raising as a defense the peremptive periods set forth in LSA-R.S. 9:5606. Plaintiffs argued that each time the policy was renewed, their agent failed to point out the inadequacy of their coverage, actions which constituted a continuing tort or a new tort. Biggers, 886 So.2d at 1182. The Fifth Circuit Court of Appeal rejected plaintiffs' argument, noting that after the issuance of the original policy, there was no occasion for the agent to misrepresent the coverage. Biggers, 886 So.2d at 1183.
On the other hand, in Sonnier v. Louisiana Farm Bureau Mutual Insurance Co., XXXX-XXXX (La.App. 3rd Cir.3/1/06), 924 So.2d 419, 420, writ denied, XXXX-XXXX (La.5/26/06), 930 So.2d 33, when plaintiffs purchased homeowners insurance in 1998, they requested replacement cost coverage, but their agent told them that replacement cost coverage was not available in their parish. Each year at renewal, plaintiffs again requested replacement cost coverage and were told it was unavailable. When plaintiffs later made a claim under their policy, they were informed that their insurance company did, in fact, offer replacement cost coverage. Plaintiffs then filed suit against their agent for his failure to inform them of the available coverage. Sonnier, 924 So.2d at 420.
Although the agent contended that plaintiffs' claim against him was perempted pursuant to LSA-R.S. 9:5606, the court rejected this argument, noting that each time the policy came up for renewal, plaintiffs sought replacement coverage, and each time, they were denied. Thus, the court concluded that each failure by the agent to inform plaintiffs of the availability of replacement cost coverage, when they requested such coverage at renewal, constituted a separate act. Because plaintiffs had filed suit within one year of discovering the availability of such coverage and within three years of the agent's last failure to notify plaintiffs of the coverage, their suit was not perempted by LSA-R.S. 9:5606. Sonnier, 924 So.2d at 422.
Although the instant case does not involve an alleged negligent act occurring during renewal of a policy, we find the analysis in the aforementioned cases instructive. Contrary to the factual situations in Bel and Biggers, wherein the plaintiffs' communication with their agents did not extend beyond the original allegedly negligent act, in the instant case, the State communicated, by letter, with Alexander on two separate and distinct occasions, informing Alexander about the Odom litigation, once in 1998 and once in 2000. On each of those two occasions, Alexander failed to take any action to submit this notification to National Union. Thus, we conclude, as the court did in Sonnier, that each of these allegedly negligent acts or omissions by Alexander constitutes a separate and distinct act. Thus, the remaining question is whether each of these acts gave rise to immediately apparent damages. Bustamento, 607 So.2d at 540.
On appeal, the State contends that while National Union was certainly prejudiced by Alexander's failure to relay the State's first notice in 1998, trial was still seventeen months away at that time, and National Union, thus, still had time to involve itself in the litigation and protect its rights. However, the State notes that when Alexander failed to relay the second notice in 2000, trial was less than two weeks away, and National Union could have been seriously prejudiced in its ability to protect itself. Thus, the State contends, any damage to National Union arising from Alexander's failure to relay the 1998 notice is surely separate and distinct from the damage arising from Alexander's failure to relay the 2000 notice.
*97 Additionally, the State argues that the question of the extent to which National Union was prejudiced, and, the resulting damage to the State, is a disputed issue of fact. Noting that an insurer cannot escape liability unless it suffers prejudice either in fact or as a matter of law from the late notice, Barnes v. Lumbermen's Mutual Casualty Co., 308 So.2d 326, 328 (La.App. 1st Cir.1975), the State submits that the unresolved question of "whether, when, and to what extent Nation Union . . . was prejudiced" by Alexander's separate and distinct acts of failing to notify National Union of the Odom litigation makes summary judgment inappropriate. We agree.
As noted above, Alexander's first failure to relay the State's notice of the Odom litigation occurred seventeen months prior to trial, whereas its second failure to relay the State's notice of the claim occurred when trial was approximately two weeks away. This second failure would arguably have greater potential for prejudice to National Union and its attempts to escape liability because insufficient time remained to prepare a defense to protect its interests. However, this factual issue cannot be determined from the record before us. Specifically, a question remains as to whether each of the two separate and distinct acts of alleged negligence by Alexander gave rise to "immediately apparent damages," such as to constitute separate and distinct causes of action. See Bustamento, 607 So.2d at 540. If, indeed, these acts gave rise to or constituted separate causes of action, the State's suit against Aon, as successor to Alexander, filed within one year of the State's discovery of Alexander's failure to relay notification of the claim to National Union and within three years of Alexander's last failure to relay such notification in 2000, would not be perempted by LSA-R.S. 9:5606. Accordingly, we must conclude that Aon failed to establish its entitlement to judgment summarily dismissing the State's claims against it as a matter of law.

CONCLUSION
For the above and foregoing reasons, the March 19, 2007 judgment, dismissing the State's claims against Aon Risk Services, Inc. of Louisiana, is reversed. This matter is remanded for further proceedings consistent with the views expressed herein. Costs of this appeal are assessed against Aon Risk Services, Inc. of Louisiana
REVERSED AND REMANDED.
GUIDRY, J. concurs in the result.
NOTES
[1] Subsequently, the declarations page of the policy was amended to provide that the insurer's name was National Union Fire Insurance Company of Louisiana.
[2] We reject the State's argument that its claim against Aon is not governed by LSA-R.S. 9:5606. This statute broadly encompasses all actions for damages against an insurance agent or broker, whether based on tort, breach of contract, or otherwise, arising out of an engagement to provide insurance services. Alexander's failure to relay notification of a potential claim to the insurer appears to arise out of the State's engagement of Alexander to provide insurance services.
[3] In an affidavit submitted in opposition to Aon's motion for summary judgment, Andrew Hall, a risk claims adjuster for the State, attested that the State first learned that Alexander had never forwarded its 1998 and 2000 notices of the Odom litigation to National Union when the State received a January 4, 2002 letter from AIG, stating that it had no prior notice of the matter. The State then filed suit against Aon, as Alexander's successor, on December 27, 2002.