GAIDRY, J.
l2An excess insurer of the State of Louisiana appeals a partial summary judgment, finding it liable to indemnify the State as insured for liability within the excess coverage and rejecting a contractual defense of late notice. For the following reasons, we affirm the judgment in part and reverse it in part.
FACTS AND PROCEDURAL HISTORY
On January 9, 1989, the Louisiana Division of Administration’s Office of Risk Management (ORM), the agency charged with the management of the State’s insurance and self-insurance, issued an “Invitation for Bids” for “following form” excess insurance coverage for the State and its various agencies. The policy period for the various excess coverages was to be from July 1, 1989, to July 1, 1990, with annual options to renew until July 1, 1992. Among the coverages for which bids were sought was “following form excess road and bridge hazard liability” coverage, in excess of the State’s $5,000,000.00 per occurrence primary self-insurance, covering claims against the Louisiana Department of Transportation and Development (DOTD).
Alexander and Alexander, Inc. (later merged into Aon Risk Services of Louisiana, Inc., and hereinafter referred to as “Aon”) was an independent insurance agency and brokerage firm that submitted a multi-coverage bid proposal in response *1240 to the Invitation for Bids.[1] The proposal included two layers of excess liability coverage for comprehensive general liability and other risks, including road and bridge hazard liability coverage. The first layer of $20,000,000.00 per occurrence was to be provided by National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National |3Union). The Invitation for Bids required that each bid proposal be signed by authorized representatives of both the bidding agent or broker and each insurer providing coverage, and Aon’s proposal bore the signature of National Union’s regional manager as the “[ajuthorized [ijnsurance [cjompany representative.”
Aon’s bid was accepted by the State on May 26, 1989, and National Union subsequently issued the excess policy. ORM exercised the option to renew the excess policy for the successive policy periods. The policy period at issue was from July 1, 1991, to July 1,1992.
On September 18, 1991, Michael Williams was involved in a single-vehicle accident on a westbound overpass of Interstate Highway 10 in Lake Charles, Louisiana. Traffic ahead of the overpass was stalled due to a prior accident, but the congestion was not visible to approaching motorists until they reached the crest of the overpass. Mr. Williams evidently moved his truck from the right lane to the left upon observing the stalled traffic ahead. The truck then struck the overpass guardrail adjacent to the left lane, vaulting over the guardrail and falling to the street below. Mr. Williams suffered severe and disabling injuries, including a closed head injury with brain damage that rendered him functionally quadriplegic, confined to bed or a wheelchair, and unable to swallow and eat independently, requiring 24-hour supervision and care.
Due to the catastrophic nature of his injuries, Mr. Williams was interdicted, and on July 13, 1992, his stepfather and curator, Harry Odom, filed suit for damages, together with the mother of Mr. Williams’s two minor children. The defendants named in the original petition were the City of Lake Charles, its police department, and their respective liability insurers identified by pseudonyms. The plaintiffs alleged that the City of Lake 14 Charles and its police department were negligent by their failure to properly warn approaching motorists of the congestion caused by the prior accident, to monitor and reroute traffic to prevent further congestion and accidents, and to properly train the city police officers to handle such a situation. By an amended petition filed on February 8, 1993, DOTD was joined as a defendant. The plaintiffs alleged that DOTD was liable based upon the defective design and construction of the overpass guardrail.[2]
Sometime in 1998, the City of Lake Charles and its police department settled with the plaintiffs and were dismissed, leaving DOTD as the sole remaining defendant. On August 19, 1998, Andrew Hall, a claims adjuster for ORM, wrote to Aon for the purpose of notifying it “of a possible excess claim” under the excess policy, and enclosed copies of the plaintiffs’ pleadings. The letter contained a brief account of the accident facts and described Mr. Williams’s injuries as “serious bodily injuries which has [sic ] rendered him a paraplegic.” Mr. Hall advised Aon that ORM felt that DOTD had “minimal exposure” and did not anticipate an award at trial exceeding the State’s self-insured re *1241 tention. There is no evidence that any representative of ORM, DOTD, or the State notified either Aon or National Union of the claim made on behalf of Mr. Williams and his children prior to that time.
On January 5, 2000, Mr. Hall wrote again to Aon to provide a “status update.” He advised that the trial of the case was set to begin on January 18, 2000; that the plaintiffs made a settlement offer of $9,000,000.00; that ORM still felt DOTD had “minimal exposure”; and that ORM responded with a settlement offer of $400,000.00 “due to the extent of the medicals.” It is undisputed that Aon failed to convey the claim information received from IsORM to National Union on either occasion, and that National Union’s first actual notice of the claim was not received until after trial and judgment.
After a four-day bench trial, the trial court rendered judgment on January 24, 2000, in favor of the plaintiffs, finding DOTD 60% at fault and the City of Lake Charles 40% at fault and awarding total damages of $9,414,275.63. Mr. Odom, as Mr. Williams’s curator, appealed, as did DOTD.[3] On June 1, 2000, Aon mailed a letter to National Union, advising that a judgment had been rendered against DOTD in the amount of $5,600,000.00 and that DOTD was appealing that judgment.
On January 31, 2001, the Third Circuit Court of Appeal reversed and amended the judgment in part to decrease the fault of the City of Lake Charles to 35% and to assess 5% contributory fault to Mr. Williams. The appellate court further amended the judgment to increase the award of future medical expenses from $2,230,207.23 to $4,201,632.21, thereby increasing the total amount of damages found to $11,385,700.61 (and the principal amount of the final judgment after reduction for Mr. Williams’s contributory fault to $10,816,415.58), and to include legal interest on the total award. Odom v. City of Lake Charles, 00-01050, pp. 20-21 (La. App. 3rd Cir.1/31/01), 790 So.2d 51, 63-4, unit denied, 01-1198 (La.6/22/01), 794 So.2d 787.
On August 18, 2001, after the Odom judgment became final and definitive, Mr. Hall of ORM wrote to National Union, enclosing copies of the trial court judgment and appellate decisions and presenting a claim for payment of the sum of $2,930,723.96 under its excess policy. A second |fidemand letter requesting payment of that amount was sent on December 3, 2001.[4]
By letter dated April 23, 2002, a representative of National Union advised Mr. Hall that National Union declined coverage under its excess policy on the grounds that “the State failed to give [it] timely and adequate notice” of the Odom claim, thereby causing National Union “to suffer significant prejudice.” On December 27, 2002, the State, through ORM, filed this action against National Union and Aon for the sum of $2,930,723.96, representing that amount of its respective share of the Odom judgment in excess of its self-insured re *1242 tention, plus additional interest on that sum from August 18, 2001 (the date of Mr. Hall’s demand letter for the stated amount) and statutory penalties and attorney fees.
National Union answered the State’s petition, denying liability and alleging that the State failed to provide timely notice of the Odom claim, thereby denying National Union the right to defend the claim and to minimize its exposure to liability. It further affirmatively alleged that the State failed to competently defend the claim and to mitigate its damages. Aon also answered the petition, denying liability and raising the same defenses.
On June 5, 2006, Aon filed a motion for summary judgment, seeking its dismissal as defendant on the grounds that the State’s claim against it was perempted under La. R.S. 9:5606. The trial court granted the motion, dismissing the State’s cause of action against Aon. The State appealed, and this court reversed, holding that a genuine issue existed as to whether each 17of Aon’s omissions to convey the State’s two notices of the Odom claim to National Union caused prejudice to National Union and the extent of any such prejudice, so as to give rise to immediately apparent damages to the State. State ex rel. Div. of Admin., Office of Risk Mgmt. v. Nat’l Union Fire Ins. Co. of La., 07-1134, pp. 11-12 (La.App. 1st Cir.2/8/08), 984 So.2d 91, 96-7, writ denied, 08-0548 (La.4/25/08), 978 So.2d 370.
On August 19, 2009, National Union filed a motion for summary judgment, seeking its dismissal on the basis of its coverage defense of late and inadequate notice of the Odom claim. The State in turn filed a cross-motion for summary judgment on October 7, 2009, seeking summary judgment for the principal amount of $6,707,376.49, legal interest on that amount from the date this action was filed, and statutory penalties and attorney fees.[5]
Both motions for summary judgment were heard on November 23, 2009. Following argument, the trial court ruled that it would deny National Union’s motion and would grant the State’s motion in part as to the issue of adequacy of the notice of the claim to National Union, through Aon. The trial court’s judgment was signed on January 15, 2010, granting partial summary judgment in favor of the State on the issue of liability only, but denying the motion in all other respects, including the amount due and the claim for statutory penalties and attorney fees. The trial court also designated its partial summary judgment as final and appealable pursuant to La. C.C.P. art. 1915(B)(1). National Union now appeals both the partial | ¡^summary judgment granted in favor of the State and the judgment denying its motion for summary judgment.[6]
*1243 ASSIGNMENTS OF ERROR AND ISSUES PRESENTED
National Union contends that the trial court erred in granting partial summary judgment in favor of the State on the issue of excess coverage liability and in denying its motion for summary judgment, and that the following issues are submitted for review in determination of this appeal:
1. Whether [National Union] received timely notice of [the Odom plaintiffs’] claims.
2. Whether [Aon] is the [State’s] broker or whether [Aon] is [National Union’s] agent,
3. Whether the [State’s] notice to Aon can be imputed to [National Union.]
4. Whether the law of the case [doctrine] applies to the instant proceeding considering the prior statements of [this court in the earlier appeal in this matter.]
5. Whether [National Union] was substantially prejudiced by the [State’s] untimely notice of its claims.
DISCUSSION

Appellate Review of Summary Judgment

Summary judgment is subject to de novo review on appeal, using the same standards applicable to the trial court’s determination of the issues. Berard v. L-3 Communications Vertex Aerospace, LLC, 09-1202, p. 5 (La.App. 1st Cir.2/12/10), 35 So.3d 334, 339-40, unit denied, 10-0715 (La.6/4/10), 38 So.3d 302. The summary judgment procedure is expressly |nfavored in the law, and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La. C.C.P. art. 966(A)(2). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The mover has the burden of proof that he is entitled to summary judgment. See La. C.C.P. art. 966(C)(2). If the mover will not bear the burden of proof at trial on the subject matter of the motion, his burden does not require him to negate all essential elements of the adverse party’s claim, action, or defense. Id. Rather, if the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. Id. If the mover has put forth supporting proof through affidavits or otherwise, the adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B).

Notice to the Broker as Notice to the Insurer

National Union contends that because Aon was not its authorized or licensed agent, authorized to bind coverage, but rather an independent insurance broker, the State’s notices to Aon of the Odom claim cannot serve as sufficient notice to it of that claim. In doing so, it relies upon the general principle that an insurance broker, in contrast to an insurance agent, acts as the agent of the insured in procuring an insurance policy. See Tassin v. Golden Rule Ins. Co., 94-0362, p. 7 (La.App. 1st Cir.12/22/94), 649 So.2d 1050, 1054. The *1244 evidence submitted in connection with the motions at issue |inindisputably establishes that Aon was acting as an independent insurance broker in its role as a responding bidder to ORM’s Invitation for Bids. However, it is also well settled that a court can find that the legal relationship of principal-agent exists, so as to bind the insurer, despite the failure of the person acting for the insurer to have been specifically licensed as its agent. Id.
Whether a broker in any particular transaction acts as the agent of the insurer or insured is a question of fact dependent on the particular circumstances of the case. Id., 94-0862 at p. 8, 649 So.2d at 1054. The State contends that National Union contractually agreed to allow Aon to serve as its agent for notice of claims under its policy, by virtue of the terms of the Invitation for Bids and Aon’s bid proposal, both of which were incorporated in its policy, along with the terms of ORM’s underlying primary policy of self-insurance.
Contracts have the effect of law for the parties. La. C.C. art. 1983. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective. La. C.C. art. 2049.
Interpretation of an insurance contract is usually a legal question that can be properly resolved in the framework of a motion for summary judgment. N. Am. Treatment Sys., Inc. v. Scottsdale Ins. Co., 05-0081, p. 19 (La.App. 1st Cir.8/23/06), 943 So.2d 429, 443, writs denied, 06-2918 (La.2/16/07), 949 So.2d 423, and 06-2803 (La.2/16/07), 949 So.2d 424. A following-form policy of excess liability insurance “follows” or adopts the |n conditions and agreements of the underlying primary liability insurance policy. See Toston v. Nat’l Union Fire Ins. Co. of La., 41, 567, p. 5 (La.App. 2nd Cir.11/3/06), 942 So.2d 1204, 1207, writ denied, 06-2881 (La.2/2/07), 948 So.2d 1086, citing Rivere v. Heroman, 96-1568, p. 2 (La.App. 4th Cir.2/5/97), 688 So.2d 1293, 1294, and Black’s Law Dictionary 821 (8th ed.2004). The terms of the ORM policy of self-insurance, being incorporated by reference in National Union’s policy, are therefore relevant to National Union’s rights and duties under its policy. See Toston, 41,567 at p. 5, 942 So.2d at 1207. Unless there is an express exception to the form of the underlying policy, the excess insurer under a following-form policy is governed by the underlying policy’s terms. Id.
In this case, ORM’s underlying primary policy was issued to DOTD as the named insured, and under its general conditions provided the following, in pertinent part:
2. Duties In The Event of Occurrence, Claim or Suit
a. You must see to it that we are notified promptly of an “occurrence” which may result in a claim. Notice should include:
(1) How, when and where the “occurrence” took place; and
(2) The names and addresses of any injured persons and witnesses.
b. If a claim is made or “suit” is brought against any insured, you must see to it that we receive prompt written notice of the claim or “suit.”
c. You and any other involved insured must:
(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or “suit;”
*1245 [[Image here]]
112(3) Cooperate with us in the investigation, settlement or defense of the claim or “suit;” ...
ORM’s policy defined “you” as “the Named insured shown in the Declarations” (DOTD) and “we” and “us” as “the Company providing this insurance.” As National Union provided the following-form excess policy, the words “we” and “us” as incorporated in its policy logically and necessarily referred to National Union. As posed by National Union, the question becomes, did the notice provisions of ORM’s policy, as incorporated in the excess policy, require the State to provide the required notice of the Odom claim directly to National Union as the insurer?
The Invitation for Bids contained the following provision:
Be aware that the actual contract between the State of Louisiana and the bidder I contractor shall consist of the following documents: (i) IFB [“Invitation for Bids’] and any amendments issued thereto, (2) the proposal submitted by the bidder/contractor in response to the IFB, and (3) the actual policy issued. In the event of a conflict in language between the three documents referenced above, the provisions and requirements set forth and/or referenced in the IFB shall govern. The ORM reserves the right to clarify any contractual relationship in writing and such written clarification shall govern in case of conflict with the applicable requirements stated in the IFB or the bidder/contractor’s proposal. In all other matters not affected by the written clarification, if any, the IFB shall govern. The bidder/contractor is cautioned that its proposal shall be subject to acceptance by the ORM without further clarification. In the event of any discrepancies between the insurance requirements delineated in these bid specifications and the model policy(ies) provided herein, the bid specifications shall govern.
(Emphasis added.)
In response to a requirement in the Invitation for Bids that the bidder provide a narrative description of the insurer’s claims handling procedures, the bid proposal submitted by Aon and accepted by ORM contained the following:
113The State shall provide a written report to the Agent or Companies within 72 hours of all occurrences involving Bodily Injury to one or more persons if the total claim is expected to be in excess of $1,000,000.00. A report should be made on all losses involving fatality, brain damage, paralysis or traumatic injury of any nature. A written report should also be submitted within 72 hours on any Property Damage loss that is expected to exceed $1,000,000.
The reports should include the date of the occurrence, the name or names of claimants, a brief description of the occurrence and the dollar reserve amount established by the ORM Claim Department.
The State should then submit quarterly loss runs listing all claims for which total reserves exceed $1,000,000.
An immediate telephone report should be made on any occurrence which is expected to penetrate an excess layer.
When National Union issued its policy in accordance with ORM’s acceptance of Aon’s bid, the foregoing notice provision became part of the policy terms, binding upon both National Union and the State as insured. As an express exception to the general notice provisions of ORM’s underlying policy of self-insurance, its language controls in the event of a conflict between its terms and those of ORM’s underlying policy. See Boston, 41,567 at p. 5, 942 So.2d at 1207. Under the language of the foregoing notice provision, the State could comply with its duty to notify its *1246 excess insurers providing coverage under Aon’s bid proposal of any claims by reporting the claims to either Aon or those insurers.
As the insurer issuing the policy at issue, National Union is charged with knowledge of its contents. See Lafauci v. Jenkins, 01-2960, p. 11 (La.App. 1st Cir.1/15/0S), 844 So.2d 19, 27, writ denied, 03-0498 (La.4/25/03), 842 So.2d 403. An insurer misconstruing the clear language of its own policy does so at its peril. Id., 01-2960 at p. 12, 844 So.2d at 28. The issue of whether notice to Aon of the claim served as notice to National Union is ultimately not dependent upon Aon’s legal status as an insurance broker or [ 14agent for underwriting purposes. Reading the terms of the policy as a whole, it is clear that by its bid proposal Aon contractually assumed the role of National Union’s agent for the limited purpose of receiving notice of claims from the State, and that National Union expressly consented to that arrangement being incorporated in the terms of its excess policy upon ORM’s acceptance of the bid. The trial court correctly concluded that notice to Aon met the requirements of the excess policy regarding notice of the claim to either Aon or to National Union directly.

Late Notice Must Cause Actual Prejudice to the Insurer

The legal effect of a liability policy provision requiring notice to an insurer of a claim has been described as follows:
The function of the notice requirements is simply to prevent the insurer from being prejudiced, not to provide a technical escape-hatch by which to deny coverage -in the absence of prejudice nor to evade the fundamental protective purpose of the insurance contract to assure the insured and the general public that liability claims will be paid up to the policy limits for which premiums were collected. Therefore, unless the insurer is actually prejudiced by the insured’s failure to give notice immediately, the insurer cannot defeat its liability under the policy because of the non-prejudicial failure of its insured to give immediate notice of an accident or claim as stipulated by a policy provision.
Miller v. Marcantel, 221 So.2d 557, 559 (La.App. 3rd Cir.1969). In that case, it was held that an insurer was not entitled to summary judgment dismissing a claim under its policy based upon only “the naked delay in notifying the insurer of the suits brought against the insured,” without other prejudice being alleged or shown. Id. at 560. Actual prejudice to an insurer by reason of untimely notice of a claim cannot be presumed from only the delay itself, absent unusual or aggravated circumstances, such as failure to provide notice until after trial on the merits. See Branzaru v. Millers Mut. Ins. Co., 252 So.2d 769, 770 (La.App. 1st Cir.1971).
115It is undisputed by the parties that no notice of the plaintiffs’ underlying claim was given to either Aon or National Union until almost seven years after the accident and over five years after DOTD was joined as a defendant. Under any reasonable interpretation of the terms, the notice finally given to Aon by the State can hardly be considered “immediate” or even “prompt.” But National Union did not submit any evidence of actual prejudice, apart from that delay, in support of its motion for summary judgment. Because it failed to establish a prim a facie case of delayed notice resulting in actual prejudice, its motion was appropriately denied by the trial court. See Burge v. Nw. Nat’l Ins. Co. of Milwaukee, 08-1396, p. 10 (La. App. 4th Cir.6/3/09), 14 So.3d 616, 623, writ denied, 09-1501 (La.10/9/09), 18 So.3d 1284. This conclusion is not determinative of the State’s cross-motion in this matter, however.

*1247
Is There Genuine Dispute on the Issue of Actual Prejudice?

As the party bearing the burden of proof as to its motion, the State had the burden of establishing its right to coverage under the terms of National Union’s policy, including its provisions requiring notice to that insurer. The partial summary judgment in its favor on the issue of National Union’s liability for coverage is dependent upon the absence of any genuine issue of material fact relating to National Union’s coverage defense, particularly the crucial issue of actual prejudice to National Union caused by the timing of notice of the Odom claim.[7] In order to shift the burden of proof of “factual | ifisupport sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial” to National Union on its defense, the State was required to show “absence of factual support for one or more elements” essential to that defense. See La. C.C.P. art. 966(C)(2).
Each case involving delayed notice to an insurer of a claim under its policy must stand upon its own facts and circumstances. Jackson v. State Farm Mut. Auto. Ins. Co., 211 La. 19, 24, 29 So.2d 177, 179 (La.1946). The jurisprudence has identified various factors appropriate for consideration in determining whether late notice will operate to relieve a liability insurer of its obligations under its policy. These include: (1) the time frame specified by the policy for notice of an accident, occurrence, claim, or lawsuit; (2) when the insured first discovered the occurrence or injury or that a claim would be made; (3) the length of the delay in notice to the insurer, and the time of notice relative to trial of a lawsuit on the claim; (4) whether the insured substantially complied with the time and form of notice required by the policy; (5) whether the claim is a direct action by the injured person against the insurer under the Louisiana Direct Action Statute, La. R.S. 22:1269 (formerly La. R.S. 22:655), and when the injured person discovered the existence and identity of the insurer; (6) whether the insurer has suffered actual prejudice to its defense of the claim because of the delay in notice; (7) the good faith of the insured and the injured person; (8) whether the insured was an average *1248 policyholder, inexperienced in the law |17or insurance claims procedure; and (9) the existence of any special circumstances, such as fraud or collusion. See Jackson, 211 La. at 22-25, 29 So.2d at 178-79; West v. Monroe Bakery, Inc., 217 La. 189, 203, 46 So.2d 122, 127-28 (La.1950); and Miller, 221 So.2d at 559-60.
Our courts have held that an insurer’s defense of late notice of a claim is more strictly construed when the injured party is asserting a direct action against the insurer than when the dispute concerns only the parties to the insurance contract. See West, 217 La. at 203-11, 46 So.2d at 127-30. The present action does not involve an injured plaintiff asserting a third-party direct action against National Union; the Odom plaintiffs never sued National Union, and the judgment in their favor has already been satisfied. Accordingly, we need not consider the equities upon which the Direct Action Statute is based. Additionally, it is certainly significant that the named insured, DOTD, is a sophisticated state agency frequently involved in litigation related to its insured operations and that both its insurance coverage and defense were managed by ORM, another sophisticated state agency statutorily charged with virtually the same duties imposed upon private liability insurers.
The relative length of the delay in notice to the insurer is an important factor, and for good reason. Time is obviously an important factor in both the prosecution and defense of personal injury actions.[8] In defending a claim of such magnitude as the Odom claim, it is obvious that promptness, diligence, and thoroughness in investigation, discovery, trial preparation, and negotiation are even more crucial. Brain injuries and paralysis are |18among the most devastating and disabling personal injuries, and both general and special damages for such injuries typically fall within the highest range of judgment awards. The notice provision of Aon’s bid proposal emphasized that the State as insured was required to make written reports to Aon or National Union of claims involving “brain damage” and “paralysis.” The contractual obligation of the State, as insured, to provide prompt notice of the Odom claim could hardly have been more specific under the circumstances.
The State failed to introduce any evidence to excuse its failure to provide any notice to its excess insurer of the plaintiffs’ claims between 1993 and 1998, despite the fact that the character of Mr. Williams’ catastrophic injuries (brain damage resulting in functional quadriplegia) and their effects (mental and physical disability requiring interdiction and constant healthcare supervision) were indisputably known by the State long before 1998. At the very least, there is genuine dispute as to when the State “expected” the Odom claim “to be in excess of $1,000,000.00.” [9]
*1249 A fact is “material” when its existence or nonexistence may be essential to the plaintiffs cause of action (or the defendant’s defense) under the applicable theory of recovery. See Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751. In addition to its failure to establish the timeliness of its notice to Aon under the policy terms, the State further failed to adequately establish the “absence of factual 1iasupport” for the other element “essential to the adverse party’s ... defense,” or the lack of actual prejudice by reason of the delayed notice. See La. C.C.P. art. 966(C)(2). Just as prejudice to an insurer cannot be presumed merely from late notice of a claim under the strict policy language, lack of prejudice to the insurer cannot be presumed merely from the fact that notice of the claim is given to the insurer some time prior to trial and rendition of judgment. Because the State did not establish the absence of any essential element of National Union’s defense of late notice by affidavit or other competent evidence, National Union was not required to come forward with opposing evidence, and could properly rely on the “allegations or denials” of its answer in opposing summary judgment. See La. C.C.P. art. 967(B).
If ORM as primary self-insurer in fact failed to competently defend the action prior to 1998, as affirmatively alleged by National Union in its answer, then National Union may have been prejudiced by the lack of reasonable opportunity to defend the action during the five-year interval between 1993 and 1998. Given the State’s extensive delay in reporting the underlying claim (a delay of years that appears virtually unprecedented in our jurisprudence) and the lack of any contrary evidence on this point, the existence of actual prejudice to National Union, as alleged in its answer, clearly remains a disputed issue of material fact here.
CONCLUSION
The State, as the party seeking summary judgment on its right to indemnity under the policy, did not establish a prima facie case of absence of prejudice to National Union by simply establishing that it provided notice to National Union, through Aon, in 1998, given the notice requirements of the excess policy and the specific circumstances of the Odom claim. Despite the fact that notice was provided to Aon some 17 months prior to trial, that |2ninterval must be viewed in the context of the claim’s duration of 89 months from inception in 1992 to trial in 2000 and in light of the claim’s potential monetary value over the course of its duration. In short, the question of “whether, when, and to what extent National Union ... was prejudiced” by the State’s delay in notifying Aon and National Union of the Odom litigation remains an unresolved issue of material fact, precluding summary judgment. See State ex rel. Div. of Admin., Office of Risk Mgmt., 07-1134 at p. 11, 984 So.2d at 97.
While we affirm the trial court’s judgment as to the legal issue of the validity of notice to Aon constituting notice of the claim under the terms of National Union’s policy, we conclude that the trial court erred in granting summary judgment as a matter of law on the issue of National Union’s liability under its policy, based upon lack of prejudice, and reverse its judgment in part on that issue. We further affirm the trial court’s judgment denying National Union’s motion for summary judgment. The costs of this appeal are assessed to the opposing parties, the State and National Union, in the same respective proportions, the portion of the State being fixed at $1,676.57, or one-half of the total costs.
AFFIRMED IN PART AND REVERSED IN PART.

. Under the bid proposal, various insurers were to provide the excess coverages for the different listed categories of risks in the Invitation for Bids.

. The Louisiana Department of Public Safety and Corrections was later named as a defendant, but was dismissed by summary judgment.

. As it was not listed as a party to the appeal in the reported decision, National Union apparently did not independently appeal the judgment, as it could have done under the authority of La. C.C.P. art. 2086. Its omission in that regard may have been attributable to Aon’s failure to communicate any notice of the Odom claim prior to the expiration of the deadline for instituting such an appeal.

. The actual principal amount of DOTD’s monetary share of liability in excess of the State’s $5,000,000.00 self-insured retention was $1,489,849.35 (based upon $6,489,849.35, or 60% of $10,816,415.58), so the figure of $2,930,723.96 presumably represented the total of that excess principal and accrued legal interest on that figure. National Union has denied receiving the first demand letter of August 18, 2001.

. The State at some point satisfied the judgment against DOTD by payment of the sum of $11,707,376.49 to the Odom plaintiffs. The sum paid presumably represented the principal amount of $6,489,849.35 plus accrued legal interest from July 13, 1992, through the date of payment, as well as DOTD's share of court costs. In its cross-motion for summary judgment, in contrast to its petition in this matter, the State claimed that National Union as excess insurer owed the sum of $6,707,376.49, the entire amount paid in excess of its self-insured retention of $5,000,000.00, including interest on both the self-insured retention limit and the excess judgment. See n.4, supra.

. When an unrestricted appeal is taken of a final judgment determinative of the merits, the appellant is generally entitled to seek review of all adverse interlocutory judgments prejudicial to him, in addition to the review of the final judgment. See Judson v. Davis, 04-1699, p. 8 (La.App. 1st Cir.6/29/05), 916 So.2d 1106, 1112, writ denied, 05-1998 (La.2/10/06), 924 So.2d 167. In the case of an appeal of a partial judgment or partial summary judgment designated as final under La. C.C.P. art. 1915(B), an appellant may also appeal an interlocutory judgment involving the same or related issues, such as a judgment denying a cross-motion for summary judgment. See Dean v. Griffin Crane & Steel, Inc., *1243 05-1226, p. 4 n.3 (La.App. 1st Cir.5/5/06), 935 So.2d 186, 189 n. 3, writ denied, 06-1334 (La.9/22/06), 937 So.2d 387.

. In our prior decision in this action, we reversed summary judgment dismissing the State's claims against Aon on the grounds that the issue of any actual prejudice suffered by National Union was in dispute. In this appeal, National Union insists that our prior holding constitutes the “law of the case,” and that we should simply reverse the trial court’s judgment on that basis. We disagree. The "law of the case” doctrine embodies the rule that an appellate court will not consider its own rulings of law in the same case. Lejano v. Bandak, 97-0388, p. 23 (La.12/12/97), 705 So.2d 158, 170, cert. denied sub. nom Lejano v. K.S. Bandak Assuranceforeninger Gard, 525 U.S. 815, 119 S.Ct. 52, 142 L.Ed.2d 40 (1998). The doctrine is the proper procedural principle, as opposed to res judicata, governing prior judgments by either trial or appellate courts on issues within the same case. Bank One, Nat'l Ass’n v. Velten, 04-2001, p. 6 (La.App. 4th Cir.8/17/05), 917 So.2d 454, 458-59, writ denied, 06-0040 (La.4/28/06), 927 So.2d 283, cert. denied, 549 U.S. 826, 127 S.Ct. 349, 166 L.Ed.2d 44 (2006). It does not apply when the underlying operative facts upon which the court’s prior decision was based have changed. Id., 04-2001 at p. 7, 917 So.2d at 459. The initial denial of summary judgment on an issue does not bar a second motion for summary judgment on the same issue, as the initial denial of summary judgment is interlocutory in nature and the second motion must be decided upon the facts presented when it is heard. See Saizan v. Pointe Coupee Parish Sch. Bd., 10-0757, p. 8 (La.App. 1st Cir. 10/29/10), 49 So.3d 559, 563. Thus, the "law of the case” doctrine cannot apply here. See McIntyre v. St. Tammany Parish Sheriff; 02-0700, p. 6 (La.App. 1st Cir.3/28/03), 844 So.2d 304, 308.

. One of ORM’s express statutory duties is to promulgate rules and regulations promoting "the early reporting of all accidents, ... the investigation of such reports, and the compromise of a claim or lawsuit where appropriate” where a state agency might be liable. La. R.S. 39:1535(B)(12).

. Significantly, the substantive law in effect at the time of the accident in 1991 provided that a joint tortfeasor was solidarily liable for up to 50% of a plaintiff's damages where that tortfeasor’s respective proportion of fault was 50% or less and greater than the plaintiff’s proportion of comparative fault. See former La. C.C. art. 2324 (1991). For example, if DOTD was found even only 2% at fault for Mr. Williams’s injuries, and Mr. Williams found 1% at fault, DOTD could still be held liable for up to 50% of any monetary award for Mr. Williams’s catastrophic injuries. Thus, DOTD's potential exposure to monetary liability was not necessarily strictly proportionate with the percentage of fault assessed to it, and this circumstance should certainly have been taken into account by ORM in its ongoing evaluation of the Odom claim between 1993 and 1998.