HIGGINBOTHAM, J.
laThis is an action for personal injuries sustained by a special-education teacher, who was allegedly attacked by a ten-year-old special-education student.[2] The teacher seeks recovery for the negligent and intentional acts of the minor child’s parents and the minor, for whom the parents are vicariously liable. The trial court granted summary judgment in favor of the parents’ homeowner’s insurer based upon an intentional act exclusion contained in the homeowner’s policy. For the following reasons, we affirm.
FACTS
Denise Breazeale and her husband, Thomas Breazeale, both individually and on behalf of their minor child, Thomas Breazeale, Jr., (“the Breazeales”), plaintiffs herein, filed the instant lawsuit seeking to recover damages for personal injuries allegedly sustained by Ms. Breazeale when she was physically assaulted by J.T., a ten-year-old autistic student. The incident happened at the Lake Harbor Middle School in Mandeville, Louisiana, on August 26, 2010. J.T.’s parents, T.T. and C.T., both individually, and as the parents and legal guardians of J.T., were named as defendants, together with Bankers Specialty Insurance Company (“Bankers”), in its capacity as the homeowner’s insurer of J.T.’s parents.[3] The St. Tammany Parish School Board (“School Board”) intervened in the lawsuit to recover workers’ compensation benefits and medical expenses paid to, and on behalf of, Ms. Breazeale, adopting all allegations of the Breazeales’ petition for damages.
|4In the petition, Ms. Breazeale alleged that J.T.’s parents were vicariously and/or strictly liable for the violent actions of their minor child, who injured Ms. Breazeale by hitting, kicking, scratching, pulling, grabbing, and pushing her into the wall and floor while at school, causing her physical and emotional injuries. The petition alleges that J.T.’s actions constituted negligence, and/or alternatively, an intentional tort. Additionally, the petition alleges that J.T.’s parents were negligent in failing to obtain proper treatment, programs, and medication for J.T., failing to warn of J.T.’s propensity for physical contact, and failing to keep J.T. home from school when he was agitated.
Initially, on June 28, 2011, J.T.’s parents and Bankers filed a joint answer, generally denying all of the Breazeales’ allegations, except to admit that Bankers issued a *196 policy of insurance that was the best evidence of its contents, terms, and limitations. J.T.’s parents and Bankers also served initial discovery requests on the Breazeales. But then on August 8, 2011, after filing a motion and order to substitute separate counsel of record, Bankers filed a supplemental and amending answer solely on its behalf, asserting that the policy of insurance issued to J.T.’s parents excluded coverage for intentional acts. Bankers filed a similar response to the School Board’s petition for intervention, asserting the coverage defense. J.T.’s parents filed a separate answer to the School Board’s intervention on August 18, 2011, the same day that Bankers issued, by certified mail, a reservation-of-rights letter to J.T.’s parents. The letter advised J.T.’s parents that Bankers would continue to investigate coverage issues pursuant to a reservation of rights, because some of the lawsuit’s allegations may not meet policy definitions and some policy exclusions may apply.
Thereafter, Bankers filed a motion for summary judgment on September 21, 2011. Bankers sought dismissal on the ground that the homeowner’s insurance policy issued to J.T.’s parents excludes from coverage any liability arising from the | ^intentional acts on the part of an insured (the “intentional acts exclusion”), including the related claim of the School Board for recovery of workers’ compensation and medical benefits paid to or on behalf of Ms. Breazeale. In support of its motion, Bankers attached a certified copy of the insurance policy as an exhibit, with references to the policy’s endorsement that modified the intentional acts exclusion. Bankers also attached excerpts from Ms. Breazeale’s deposition, showing that J.T.’s ten-minute attack should be characterized as an intentional act, which is specifically excluded by the policy.
J.T.’s parents opposed Bankers’ motion for summary judgment, arguing that by initially answering the Breazeales’ lawsuit jointly, on behalf of Bankers and J.T.’s parents, Bankers conduct resulted in a waiver of coverage defenses and created a conflict between J.T.’s parents and their attorneys, who initially represented both Bankers and J.T.’s parents. In support of their opposition, J.T.’s parents attached the reservation-of-rights letter they received from Bankers, affidavits by J.T.’s parents, and a letter from the initial counsel of record informing J.T.’s parents of the insurance coverage issue. Alternatively, J.T.’s parents argued that Bankers’ intentional acts exclusion contravenes the public policy of the State of Louisiana. J.T.’s parents cited a directive issued by the Commissioner of Insurance on June 9, 2000, known as Directive Number 152, which they attached to their opposition.
The Breazeales also opposed Bankers’ motion for summary judgment, for the same reasons urged by J.T.’s parents, i.e., that the intentional acts exclusion is against Louisiana’s public policy, and that Bankers waived its coverage defense by not properly advising, notifying, and protecting the interests of its insureds. The Breazeales did not offer any evidence in support of their opposition.
After a hearing, the trial court took the matter under advisement before issuing reasons for judgment on May 11, 2012. The trial court signed a judgment |fion May 31, 2012, granting summary judgment in favor of Bankers and dismissing all of the Breazeales’ claims, as well as the claims of the School Board, against Bankers. J.T.’s parents did not file an appeal, but the Breazeales and the School Board both appealed. Essentially, both appellants argue that the trial court erred in granting summary judgment in favor of Bankers, because Bankers knowingly relinquished and *197 waived its right to deny coverage to its insureds when it initially defended the lawsuit without retaining conflict counsel for J.T.’s parents. Additionally, the Breaz-eales assert that the trial court erred in failing to find that the intentional acts exclusion in the Bankers’ policy contravenes the public policy of the State of Louisiana and that it violates a directive of the Commissioner of Insurance.
SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. Johnson v. Evan Hall Sugar Co-op., Inc., 2001-2956 (La.App. 1st Cir.12/30/02), 836 So.2d 484, 486. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the mover Is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(B)(2). Summary judgment is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. Code Civ. P. art. 966(A)(2); Thomas v. Fina Oil and Chemical Co., 2002-0338 (La.App. 1st Cir.2/14/03), 845 So.2d 498, 501-502.
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Instead, the mover must point out to the court that 17there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense, Thereafter, the adverse party must produce factual evidence sufficient to. establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. Code Civ. P. art. 966(C)(2); Robles v. ExxonMobile, 2002-0854 (La.App. 1st Cir.3/28/03), 844 So.2d 339, 341.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Allen v. State ex rel. Ernest N. Morial—New Orleans Exhibition Hall Authority, 2002-1072 (La.4/9/03), 842 So.2d 373, 377. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Foreman v. Danos and CurOle Marine Contractors, Inc., 97-2038 (La. App. 1st Cir.9/25/98), 722 So.2d 1, 4, writ denied, 98-2703 (La.12/18/98), 734 So.2d 637. A summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Westerfield v. LaFleur, 493 So.2d 600, 605 (La.1986). An insurer seeking to avoid coverage through summary judgment must prove that some exclusion applies to preclude coverage. Jackson v. Frisard, 96-0547 (LaApp. 1st Cir.12/20/96), 685 So.2d 622, 629, units denied, 97-0193, 97-0201 (La.3/14/97), 689 So.2d 1386, 1387.
|RLAW AND ANALYSIS

Waiver

The Breazeales and the School Board have both assigned error to the trial *198 court’s grant of summary judgment, arguing that Bankers waived its right to deny coverage to J.T.’s parents because Bankers initially defended the lawsuit without retaining separate conflict counsel for J.T.’s parents.[4] The Breazeales, the School Board, and J.T.’s parents all raised the waiver issue in their oppositions to Bankers’ motion for summary judgment. But the trial court’s reasons for judgment and the summary judgment were silent with respect to waiver. Ordinarily, silence in a written judgment as to any matter that was placed before the trial court is deemed a rejection of that demand or issue. Hayes v. Louisiana State Penitentiary, 2006-0553 (La.App. 1st Cir, 8/15/07), 970 So.2d 547, 554 n. 9, writ denied, 2007-2258 (La.1/25/08), 973 So.2d 758. Thus, we deem the trial court’s silence on the waiver issue as a denial of that contention.
J.T. and his parents, as the insureds under Bankers’ policy, are actually the most appropriate parties to complain about the trial court’s denial of the waiver issue, but they have not filed an appeal from the trial court’s grant of summary judgment in favor of Bankers. However, we note that under Louisiana’s direct action statute, La. R.S. 22:1269(B), the Breazeales have standing, along with the insureds, to be fully apprised of any affirmative defenses such as coverage defenses. See Hiser v. Rajki, 97-2208 (La.App. 1st Cir.9/30/97), 700 So.2d 1302. Thus, we find that the waiver issue is properly before us.
|9The issue of waiver is complicated because it is interwoven with an insurer’s duty to defend its insured. If the policy calls for a defense of the claim, an insurer has the obligation to provide a defense to its insured, even if ultimately the insurers may have no liability under the policy. Dugas Pest Control of Baton Rouge, Inc. v. Mutual Fire, Marine and Inland Ins. Co., 504 So.2d 1051, 1053 (La. App. 1st Cir.1987). To protect its own interest, an insurer can simultaneously provide its insured with a defense and contest coverage with its insured. Id., 504 So.2d at 1054. If an insurer has knowledge of facts indicating non-coverage and voluntarily assumes the insured’s defense without obtaining a non-waiver agreement to reserve its rights, the insurer effectively waives all such policy defenses. Peavey Company v. M/V ANPA, 971 F.2d 1168, 1175 (5th Cir.1992). The insurer’s notice of intent to avail itself of the defense of non-coverage must be timely. Id.
For Bankers’ claim of non-waiver to be plausible, Bankers must show that it issued its reservation-of-rights letter to J.T.’s parents and employed separate counsel within a reasonable time after it was informed of the claim against its insureds. See Emery v. Progressive Cas. Ins. Co., 2010-0327 (La.App. 1st Cir.9/10/10), 49 So.3d 17, 21; Dugas Pest Control, 504 So.2d at 1054. It is undisputed that Bankers provided separate counsel for J.T.’s parents from the moment that Bankers asserted its coverage defense in a supplemental and amending answer that was filed approximately six weeks after the initial jointly filed answer. Shortly thereafter, within ten days, Bankers issued a reservation-of-rights letter to J.T.’s parents, advising them of the coverage de- *199 fense.[5] On the same |10date of that letter, J.T.’s parents filed a separate answer to the School Board’s intervention, through the same counsel that had been provided for them by Bankers.
Since the Breazeales and the School Board are seeking to avoid the application of the intentional acts exclusion, they had the burden of proving that Bankers waived its right to assert its policy exclusion. See L.T. v. Chandler, 40,417 (La.App.2d Cir.12/14/05), 917 So.2d 753, 757. But there is no evidence in the record that J.T.’s parents’ legal representation was ever compromised, that J.T.’s parents were prejudiced in any way, that J.T.’s parents relied on any representation by Bankers that there definitely was insurance coverage for the Breazeales’ claims, or that Bankers’ assertion of its coverage defense/policy exclusion was untimely. When J.T.’s parents filed their separate answer to the School Board’s intervention, they did so with knowledge of Bankers’ coverage defense as clearly set forth in the reservation-of-rights letter that was sent to them by certified mail. Thus, by filing this separate answer, J.T.’s parents implicitly agreed that Bankers had reserved its coverage defense. See 15 William Shelby McKenzie & H. Alston Johnson, III, Louisiana Civil Law Treatise: Insurance Law and Practice, § 7:7, at 643 (4th Ed.2012). Therefore, our de novo review of the record reveals nothing that would create a genuine issue of material fact as to waiver. The Breazeales and the School Board failed to come forward with evidence sufficient to support a finding that Bankers waived its coverage defense. Accordingly, we find that the assignments of error regarding waiver are without merit, and the trial court’s rejection of the waiver issue was proper.

Intentional Acts Exclusion

The other issue presented in this appeal is whether, in light of the undisputed facts, Bankers is entitled to judgment as a matter of law based upon the intentional acts exclusion contained within its policy. The Breazeales maintain that the legal Inquestion posed is whether it is against the public policy of this State to allow a homeowner’s insurer to exclude coverage for damages resulting from parents’ vicarious liability for the intentional acts of their minor child.
In Doerr v. Mobil Oil Corp., 2000-0947 (La.12/19/00), 774 So.2d 119, the Supreme Court succinctly stated the law pertaining to insurance contracts, as follows:
The interpretation of an insurance contract is nothing more than a determination of the common intent of the parties .... [T]he initial determination of the parties’ intent is found in the insurance policy itself.... In analyzing a policy provision, the words, often being terms of art, must be given their technical meaning.... When those technical *200 words are unambiguous and the parties’ intent is clear, the insurance contract will be enforced as written.... If, on the other hand, the contract cannot be construed simply, based on its language, because of an ambiguity, the court may look to extrinsic evidence to determine the parties’ intent.
When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy’s terms.... On the other hand, the insurer bears the burden of proving the applicability of an exclusionaiy clause within a policy.... Importantly, when making this determination, any ambiguities within the policy must be construed in favor of the insured to effect, not deny, coverage.
Id., 774 So.2d at 124 (citations omitted). The determination of whether a contract is clear or unambiguous is a question of law. Watts v. Aetna Cas. and Sur. Co., 574 So.2d 364, 369 (La.App. 1st Cir.), unit denied, 568 So.2d 1089 (La.1990). Subject to the rules of interpretation, it is well-settled that an insurer may limit liability and impose reasonable restrictions upon its policy obligations provided that such limitations do not conflict with statutory provisions or public policy. Cutsinger v. Redfern, 2008-2607 (La.5/22/09), 12 So.3d 945, 949.
The applicable exclusionary clause, as modified by a special provision endorsement for Louisiana dated March 30, 2010, is contained in the Bankers’ policy, and provides, in pertinent part, as follows:
SPECIAL PROVISIONS — LOUISIANA
THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
Jb*
SECTION II — LIABILITY COVERAGES
SECTION II — EXCLUSIONS
E. Coverage E — Personal Liability and Coverage F — Medical Payments to Others
Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to:
Paragraph 1. Expected or Intended Injury is deleted in all forms and replaced by the following:

We do not cover any “bodily injury” or “property damage” intended by, or caused by or originating from or in connection to or which may be expected to result from the intentional or criminal acts or omissions of any insured person. This exclusion applies even if:

a. Such insured person lacks the mental capacity to govern his or her conduct;
b. Such bodily injury or property damage is of a different kind or degree than that intended or reasonably expected; or
c. Such bodily injury or property [damage] is sustained by a differ- . ent person than that intended or reasonably expected.
This exclusion applies regardless of whether or not such insured person is actually charged with or convicted of a crime.
This exclusion applies regardless of the number of “insureds”, the number of claims made, or the number of persons injured.
(Italicized emphasis supplied.)
This exclusionary clause formed the basis of the trial court’s grant of summary judgment in this case. The language is almost identical to language in an exclu *201 sionary clause that we considered en banc in Reinhardt v. Barger, 2007-2363 (La.App. 1st Cir.4/29/09), 15 So.3d 122, 126, unit denied, 2009-1786 (La.11/20/09), 25 So.3d 811, In Reinhardt, this court was unable to render a majority opinion to reverse or modify the trial court’s judgment; thus, the judgment of the trial court in that case was effectively affirmed in upholding the validity of the intentional act exclusion by summary judgment. Id., 15 So.3d at 122. In Reinhardt, the sole issue was whether the intentional act exclusion contained within the provisions of a homeowner’s policy that purported to exclude coverage for damages resulting from a parent’s vicarious liability for the intentional acts of | istheir minor child, contravened the public policy of the State of Louisiana, as stated in Commissioner of Insurance Directive Number 152.[6] Id., 15 So.3d at 124 and 127 (Pettigrew, J., concurring). This issue is again squarely presented by this appeal.[7]
Directive Number 152 was issued by the Commissioner of Insurance in response to this court’s decision in Baugh v. Ray, 97-2625 (La.App. 1st Cir.5/5/99), 751 So.2d 888 (per curiam on rehearing), where this court determined that the law does not mandate insurance coverage for vicarious liability arising from the acts of one’s children. We further determined in Baugh, 751 So.2d at 888-889, that there is no state law or public policy prohibiting a lower limit for parental vicarious liability. See Reinhardt, 15 So.3d at 127. Baugh has never been judicially overruled or superseded by legislative act.
By issuing Directive Number 152, the Commissioner of Insurance expressed concern over the limitations of vicarious parental liability in homeowners’ policies, and directed insurers to modify their policy language by deleting the exclusion. Directive Number 152 states, in pertinent part:
When consumers purchase homeowner’s insurance, their intent is to purchase a broad package policy to protect themselves from a broad range of risks that may arise out of homeownership and personal liability. A limitation for liability coverage related to children is not a reasonable expectation of the policyholder. No homeowner would knowingly purchase a homeowner’s policy limiting coverage for their liability with respect to their children.
_l±f * *
BECAUSE THE DEPARTMENT OF INSURANCE IS CHARGED WITH THE DUTY OF REGULATING THE BUSINESS OF INSURANCE IN THE PUBLIC INTEREST, THE DE *202 PARTMENT OF INSURANCE VIEWS THE USE OF ANY TYPE OF LIMITATION CLAUSE IN A HOMEOWNER’S POLICY WHICH RESULTS IN LIMITING THE LIABILITY COVERAGE OF AN INSURER FOR PARENTS’ VICARIOUS LIABILITY FOR ACTS OF THEIR CHILDREN IS AGAINST THE PUBLIC INTEREST.
Property and Casualty insurers whose policies contain a limitation of vicarious parental liability in their homeowner’s policies, endorsements or exclusions are hereby directed to modify their contracts by submitting a revised policy form, or an endorsement, deleting the exclusion.
The Breazeales urge us to find that based on Directive Number 152, public policy dictates that the intentional acts exclusion should not apply. However, this court has previously held that we are not bound by the opinion of the Commissioner of Insurance with respect to whether a policy provision violates public policy. P.D. v. S.W.L., 2007-2584 (La.App. 1st Cir.7/21/08), 993 So.2d 240, 248, writ denied, 2008-2770 (La.2/13/09), 999 So.2d 1146. It is the job of the courts to resolve disputes over insurance coverage. See Doerr, 774 So.2d at 134. See also La. Const, art. V, § 1. The opinion of the Commissioner of Insurance is persuasive, but not binding. See Reinhardt, 15 So.3d at 131 and 132 (Kuhn, J., concurring, and Parro, J., concurring) (citing Doerr, 774 So.2d at 134). We cannot allow the Commissioner to usurp either the legislative or judicial role, by issuing a directive that constitutes an unauthorized exercise of legislative and/or judicial power. Id., 15 So.3d at 131 and 133 (Kuhn, J., concurring, and Parro, J., concurring). The duty of the Commissioner is to administer the provisions of the Insurance Code. La. R.S. 22:2(A)(1). Louisiana Revised Statute 22:11 gives the Commissioner authority to promulgate rules and regulations necessary for the implementation of the Code. Reinhardt, 15 So.3d at 132 (Parro, J., concurring). The Commissioner is not the final arbiter for the interpretation and reconciliation 11sof the Code and insurance policy language. That role is constitutionally assigned to the judiciary. Id.
Because there is no ambiguity in the policy language at issue, its words should be given effect.[8] Additionally, in the absence of a conflict with a statute or public policy, insurers have the same rights as individuals to limit their liability and impose whatever conditions they desire upon their obligations. Id., 15 So.3d at 131 and 132-133 (Kuhn, J., concurring, and Parro, J., concurring) (citing Sims v. Mulhearn Funeral Home, Inc., 2007-0054 (La.5/22/07), 956 So.2d 583, 595.) Because the contract of insurance at issue unambiguously excludes coverage for the intentional or criminal acts of any insured person, even if the insured person lacks the mental capacity to govern his conduct, we affirm the decision of the trial court to uphold the exclusionary language in Bankers’ policy.
CONCLUSION
Accordingly, we affirm the judgment of the trial court granting Bankers Specialty *203 Insurance Company’s motion for summary judgment and dismissing all claims against Bankers Specialty Insurance Company, ■with prejudice. Costs of this appeal are equally assessed to plaintiffs-lst appellants, Denise Breazeale and Thomas Breazeale, and intervenors-2nd appellants, St. Tammany Parish School Board.
MOTION DENIED; JUDGMENT AFFIRMED.
WHIPPLE, C.J., concurs and assigns reasons.

. To protect the identity of the minor child involved in this appeal, we will use initials rather than full names of the minor child's parents and the child throughout this opinion. See Uniform Rules — Courts of Appeal, Rule 5-2. J.T.’s official diagnosis is Autism Spectrum Disorder.

. Bankers was formally named as a defendant in the Breazeales' first supplemental and amending petition filed on June 6, 2011. The Bankers’ homeowner’s policy issued to J.T.'s parents provided personal liability coverage and medical payments coverage for claims made or suits brought against an insured. An "insured” includes residents of the household who are relatives or are under the age of 21 and in the care of the named insured.

. Waiver occurs when there is an existing right, knowledge of its existence, and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. A waiver may apply to any provision of an insurance contract, even though this may have the effect of bringing within coverage risks originally excluded or not covered. Steptore v. Masco Const. Co., Inc., 93-2064 (La.8/18/94), 643 So.2d 1213, 1216; Emery v. Progressive Cas. Ins. Co., 2010-0327 (La.App. 1st Cir.9/10/10), 49 So.3d 17, 21.

. A reservation-of-rights letter has been held to be a sufficient non-waiver agreement. See T.H.E. Ins. Co. v. Larsen Intermodal Services, Inc., 242 F.3d 667, 675 (5th Cir.2001). A non-waiver agreement or reservation-of-rights letter, made between the insurer and the insured, is a document whereby the insurer undertakes the insured's defense with the stipulation that the insurer does not waive its right to deny coverage. See Vargas v. Daniell Battery Mfg. Co., Inc., 93-2282 (La.App. 1st Cir. 12/29/94), 648 So.2d 1103, 1106; W.T.A. v. Yeager, 2002-881 (La.App. 3d Cir. 12/11/02), 832 So.2d 1217, 1219; Cassey v. Stewart, 31,-437 (La.App. 2d Cir. 1/20/99), 727 So.2d 655, 658 n. 3, writ denied, 99-0811 (La.4/30/99), 743 So.2d 209. Even though initially, the insurer may provide the potential insured with a defense against the claim, this is not an admission that the policy provides coverage. W.T.A., 832 So.2d at 1219.

. Only a partial copy of Directive Number 152, issued by the Commissioner of Insurance on June 9, 2000, is contained within the record of this matter. However, because Directive Number 152 is a matter of public record and has been considered by this court on numerous occasions, we find that the Breazeales’ motion seeking leave to attach Directive Number 152 and a new section to their brief is unnecessary. Therefore, we deny the Breazeales' motion.

. The Breazeales argue that a different result from Reinhardt (effectively upholding the validity of the intentional acts exclusion) should take place under the facts presented in the case sub judice, because the underlying facts in Reinhardt did not involve the mental capacity of the minor. We reject this reasoning, however, because the exclusionary language in both cases specifically applied "even if ... [s]uch insured person lacks the mental capacity to govern his or her conduct[.]” See Kimble on behalf of Dedon v. Allstate Ins. Co., 97-0481 (La.App. 1st Cir.4/8/98), 710 So.2d 1146, 1148-1149, writ denied, 98-1801 (La. 10/16/98), 726 So.2d 907 (where we upheld a similar exclusionary clause in a case where the insured lacked the mental capacity to govern his conduct, and we found no violation of public policy).

. In determining the meaning of words of an insurance policy, the words and phrases used in the policy should be construed using their plain, ordinary, and generally prevailing meaning, unless the words have acquired a technical meaning. See La. Civ.Code art. 2047; Cadwallader v. Allstate Ins. Co., 2002-1637 (La.6/27/03), 848 So.2d 577, 580. When the meaning of the words is clear, the court should look no further in determining the intent of the parties. Norfolk Southern Corp. v. California Union Ins. Co., 2002-0369 (La. App. 1st Cir.9/12/03), 859 So.2d 167, 189, writ denied. 2003-2742 (La.12/19/03), 861 So.2d 579.