Judgment rendered November 16, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,797-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

UNITED HOME CARE, INC.,                          Plaintiff-Appellees
TRINITY HOME HEALTH
CARE, INC. AND JOHN D.
JONES

versus

CHARLIE SIMPSON, CHARLES                    Defendant-Appellants
GARDNER, CCZ, L.L.C., DJ-CS
PROPERTIES, INC. AND CKS
PROPERTIES, L.L.C.

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2017-1296

Honorable Daniel J. Ellender, Judge

* * * * *

AYRES, SHELTON, WILLIAMS,              Counsel for Appellant
BENSON & PAINE, LLC                         Charles Gardner
By: J. Todd Benson


BARRASSO USDIN KUPPERMAN              Counsel for Appellee
FREEMAN & SARVER, LLC                     Federal Insurance Co.
By: Steven W. Usdin
    John W. Joyce
    Laurence D. LeSueur

HYMEL DAVIS & PETERSEN, LLC          Counsel for Appellees
By:  Michael R. Davis                Charlie Simpson, CCZ,
     Tim P. Hartdegen                DJ-CS Properties, and
                                     CKS Properties

JOHN D. "DANNY" JONES                In Proper Person

\* \* \* \* \*

Before MOORE, THOMPSON, and HUNTER, JJ.

**MOORE, C.J.**

Charles Gardner appeals a summary judgment that rejected his claims against Federal Insurance Company on two business liability policies. The district court found that Federal's insureds (and Gardner's former employers), United Home Care and Trinity Home Health Care, breached their obligations to Federal under the policies and thus negated coverage. For the reasons expressed, we affirm.

## FACTUAL BACKGROUND

United and Trinity were home healthcare providers in West Monroe, Louisiana. In 2011, they hired Gardner as their controller; in 2012, they hired the other defendant, Charlie Simpson, as their chief operating officer. In March 2017, United and Trinity terminated them, citing "employee theft" (in a notice to the Louisiana Workforce Commission) and "theft and embezzlement" (in a letter to employees). In April 2017, United and Trinity (and their principal, John D. Jones) filed this suit to recover "embezzled money, misallocated and misappropriated company funds" and for "misuse of unauthorized funds." By an amended petition, they alleged that Gardner overpaid himself by more than $200,000.[1]

Gardner denied all allegations and reconvened against United, Trinity, and Jones. He raised three claims: unpaid wages and statutory penalties; defamation (contending that the accusations of embezzlement and theft were "false and lack any good faith basis"); and violations of the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, et seq.

---

[1] In brief, Federal asserts that the amount was $3.5 million.

Apparently, United and Trinity did not participate well in discovery. Gardner and Simpson filed motions to compel, and in January 2018, the district court issued a long, detailed order compelling United and Trinity to hand over 31 sets of documents pertaining to the claims (and to pay attorney fees of $2,500 to each defendant). Once this discovery was partly satisfied, Gardner found that United and Trinity had bought business liability policies from Federal in force at the time of his firing. Gardner felt that these policies would cover his wage, defamation, and LUTPA claims.[2]

In February 2018, Gardner amended his claim to add Federal as a defendant in reconvention via the Direct Action Statute, La. R.S. 22:1269. United, Trinity, and Jones all filed for Chapter 7 bankruptcy in May 2020; Gardner then amended his reconvention again, this time to frame his defamation claim solely against Federal.[3]

Federal answered denying all allegations and asserting 23 affirmative defenses. It showed that its policies, two identical ForeFront Portfolio 3.0 policies, required the insureds to notify Federal "as soon as practicable" about Gardner's claims. It contended that because the insureds failed to do so, this breach negated Federal's liability.

### THE MOTION FOR SUMMARY JUDGMENT

Federal followed up with a motion for summary judgment as to coverage and defamation. In support, it attached copies of the policies, with coverage from November 1, 2016, to November 1, 2017, and one extension

---

[2] Discovery was only partly satisfied. At a later hearing on the motions to compel, the court ordered further compliance and assessed the plaintiffs with attorney fees of $35,407 for Gardner and $69,271 for Simpson.

[3] The remaining assets of United and Trinity were acquired by an entity called FUDJ LLC, which is not a party to the appeal.

through February 10, 2018. These included provisions setting "full compliance with all the terms of this Policy" and "written notice of any Claim as soon as practicable" as conditions precedent to coverage, and a requirement that the insured must "provide [Federal] with all information, assistance and cooperation" as it may reasonably request and "do nothing that may prejudice" Federal's position or rights of recovery. Federal showed that its insureds were served with Gardner's reconventional demand, and filed an answer on June 7, 2017; however, the affidavit of Federal's vice-president and executive claims director, Mr. Allison-Couto, showed that they *never* notified Federal of the claim, and Federal was unaware of it until being served with Gardner's amended reconventional demand, on March 6, 2018; even after that, the insureds never responded to Federal's repeated requests for information or cooperation. It argued that these breaches of policy negated coverage, even as to third parties, citing *Lee v. United Fire & Cas. Co.*, 607 So. 2d 685 (La. App. 4 Cir. 1992); *Ortiz v. MeadWestvaco Corp.*, 18-869 (La. App. 3 Cir. 6/5/19), 274 So. 3d 158; and *Gorman v. City of Opelousas*, 13-1734 (La. 7/1/14), 148 So. 3d 888. It also argued that United and Trinity's persistent refusal to comply with discovery had prejudiced Federal's rights in the underlying action.

Gardner opposed the MSJ. After arguing that *Lee*, *Ortiz*, and *Gorman* were not really apposite, he cited earlier cases holding that the right of a third party under the Direct Action Statute is fixed "at the time of the accident or injuries, and the insured's later breach of the policy requirements for cooperation will not vitiate coverage in the absence of proof or fraud or conspiracy." *King v. King*, 253 La. 270, 217 So. 2d 395 (1968); *Futch v. Fidelity & Cas. Co. of New York*, 246 La. 688, 166 So. 2d 274 (1964).

3

Further, the insured's "dilatory conduct" could not negate the protection of "tort victims from insolvent tortfeasors." *West v. Monroe Bakery*, 217 La. 189, 46 So. 2d 122 (1950). In essence, United and Trinity's shoddy compliance with their policies should not negate the coverage afforded to Gardner. He also argued that Federal received *actual notice* of the claim, by service of the amended reconventional demand, within 90 days of the end of the policy period, making it timely and refuting any claim of prejudice. Finally, he argued that Federal waived any policy defenses because it failed to provide its insureds a defense by hiring separate counsel for them. *Breazeale v. T.T.*, 12-1703 (La. App. 1 Cir. 4/26/13), 117 So. 3d 192, *writ denied*, 13-1852 (La. 11/1/13), 125 So. 3d 437; *Emery v. Progressive Cas. Ins. Co.*, 10-0327 (La. App. 1 Cir. 9/10/10), 49 So. 3d 17.

Federal responded that the Supreme Court's latest statement, *Gorman*, applied the policy requirements literally, recognized the validity of a claims-made policy, and said nothing about "fraud or conspiracy"; the insureds *never* gave the required notice of claim; once it was served with the amended reconvention, Federal promptly issued a reservation of rights letter offering separate counsel, but the insureds never responded; and Federal was profoundly prejudiced by this failure to cooperate. In support, it attached copies of emails from Federal to United, Trinity, and Jones in May 2018 and January 2021.

### ACTION OF THE DISTRICT COURT

After a hearing in October 2021, the district court denied Federal's MSJ on the defamation claim, but granted it as to coverage, and rendered judgment dismissing all claims against Federal "because no coverage exists."

4

Gardner has appealed, raising one assignment of error and three issues: the trial court erred in granting summary judgment (1) on grounds that Federal's insureds failed to cooperate, in the absence of fraud or collusion, (2) on grounds that Federal's insureds failed to timely report the claim, and (3) on grounds of waiver.[4]

## APPLICABLE LAW

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for a by a litigant. *Murphy v. Savannah*, 18-0091 (La. 5/8/19), 282 So. 3d 1034. It is reviewed on appeal de novo, with the appellate court using the same criteria that governed the district court's ruling: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 A(3); *Murphy v. Savannah*, *supra*. Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment. *Landry v. Progressive Sec. Ins. Co.*, 21-00621 (La. 1/28/22), __ So. 3d __; *Bilyeu v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 50,049 (La. App. 2 Cir. 9/30/15), 184 So. 3d 69, *writ denied*, 15-2277 (La. 2/19/16), 187 So. 3d 462.

Under the Direct Action Statute, the injured person "shall have a right of direct action against the insurer within the terms and limits of the policy[.]" La. R.S. 22:1269 B(1). Any action brought under the statute "shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought

---

[4] Federal answered the appeal, contesting the denial of summary judgment as to Gardner's defamation claim, but did not brief or argue the issue, so the answer is deemed abandoned. URCA 2-8.6; *Johnston v. Shelton*, 42,103 (La. App. 2 Cir. 6/27/07), 961 So. 2d 582.

5

by the insured." La. R.S. 22:1269 C. The statute does not extend the protection of the liability policy to risks that were not covered by the policy or that were excluded thereby (at least in the absence of some mandatory coverage provisions in other statutes). *Arias v. Stolthaven New Orleans LLC*, 08-1111 (La. 5/5/09), 9 So. 3d 815; *Kansas City S. Ry. Co. v. Wood Energy Group Inc.*, 53,096 (La. App. 2 Cir. 1/15/20), 289 So. 3d 671.

The courts have recognized the difference between occurrence insurance policies and claims-made insurance policies. In *Anderson v. Ichinose*, 98-2157 (La. 9/8/99), 760 So. 2d 302, the court stated:

> With the development of a more complex society, it became more reasonable, particularly with respect to the activities of professionals, to insure against the making of claims, rather than the happening of occurrences, and "claims made" insurance developed to meet a need for professionals to insure against the making of the claim as the insured event, rather than having to struggle with traditional concepts and difficulties inherent in determining whether the "event" insured against was the commission of an act, error or omission or the date of discovery thereof or the date of injury caused thereby.
>
> The major distinction between the "occurrence" policy and the "claims made" policy constitutes the difference between the peril insured. In the "occurrence" policy, the peril insured is the "occurrence" itself. Once the "occurrence" takes place, coverage attaches even though the claim may not be made for some time thereafter. While in the "claims made" policy, it is the making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place.
>
> *Id*. at 5-6, 760 So. 2d at 305, quoting Sol Kroll, *The Professional Liability Policy "Claims Made,"* 13 Forum 842-843 (1978).

The courts also recognize differences between claims-made policies and claims-made-and-reported policies. Pure claims-made policies shift to the insured only the risk of claims incurred but not made. *Id*. Under a claims-made-and-reported policy, the risk of a claim incurred but not made,

6

as well as a claim made but not reported, is shifted to the insured. *Gorman v. City of Opelousas*, *supra*; *Kansas City S. Ry. Co. v. Wood Energy*, *supra*. The event and peril insured against is based on making and reporting of the claim within the period specified by the policy. *Id*. Claims-made-and-reported policies do not violate public policy. *Gorman v. City of Opelousas*, *supra*; *Kansas City S. Ry. Co. v. Wood Energy*, *supra*.

## POLICY PROVISIONS

Federal's policies covering United and Trinity make compliance with all terms of the policy a condition precedent to coverage:

XIV. ACTION AGAINST THE COMPANY

No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No person or entity shall have any right under this Policy to join the company as a party to any action against any Insured to determine such Insured's liability nor shall the Company be impleaded by such Insured or legal representative of such Insured.

The policies also specify written notice, from the insured to Federal, as a condition precedent to coverage, thereby making them claims-made-and-reported policies:

IV. REPORTING

(A) An Insured shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company written notice of any Claim as soon as practicable after the chief executive officer * * * becomes aware of such Claim, but in no event later than:

(1) if this Coverage Part expires (or is otherwise terminated) without being renewed with the Company, ninety (90) days after the effective date of such expiration or termination; or

(2) the expiration date of the Extended Reporting Period, if applicable, provided that if the Company sends written notice to the Parent Organization stating that this Coverage Part is being terminated for nonpayment of premium, an Insured shall give to

7

the Company written notice of such Claim prior to the effective date of such termination.

The same paragraph fixes cooperation with Federal as a condition precedent to coverage:

(D) An Insured shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company such information, assistance and cooperation as the Company may reasonably require and shall include in any notice under Subsections (A), (B) or (C) above, a description of the Claim, request or Potential Claim, the nature of any alleged Wrongful Act, the nature of the alleged or potential damage, the names of all actual or potential claimants, the names of all actual or potential defendants, the manner in which such Insured first became aware of the Claim, Potential Claim or alleged Wrongful Act, and with respect to notices of Potential Claims under Subsection (C) above, the consequences which have resulted or may result from such Potential Claim.

Finally, the policies' "Defense and Settlement" section prohibits insureds from acting against Federal's interest:

(F) The insureds agree to provide the Company with all information, assistance and cooperation which the Company reasonably requests and agrees they will do nothing that may prejudice the Company's position or its potential or actual right of recovery.

## DISCUSSION

### *Failure to Cooperate*

In his statement of the case and by his first issue, Gardner contends that under the Direct Action Statute, the rights of an injured third party against the liability insurer become fixed at the time of the accident or injuries, and the insured's later breach of the policy requirements will not vitiate coverage in the absence of "fraud or collusion." *West v. Monroe Bakery*, *supra*; *King v. King*, *supra*; *Futch v. Fidelity Cas. Co.*, *supra*; *National Union Fire Ins. Co. of Pittsburgh v. Cagle*, 68 F. 3d 905 (5 Cir.

8

1995).[5] He submits that Federal has not even alleged fraud or collusion, much less proved any. He also contends that even if the insured ignores letters, the insurer still must "attempt to contact the insured at his home or in person," which Federal did not do. *Williams v. Lowe*, 02-355 (La. App. 5 Cir. 10/16/02), 831 So. 2d 334; *Desadier v. Safeway Ins. Co.*, 97-1412 (La. App 3 Cir. 4/8/98), 712 So. 2d 925, *writ denied*, 98-1249 (La. 6/26/98), 719 So. 2d 1058.

This court recognizes the general statements in older cases like *West v. Monroe Bakery*, *King v. King*, and *Futch v. Fidelity Cas. Co.*, *supra*, but we are constrained to find that the overwhelming trend of the more recent jurisprudence has been to enforce cooperation clauses. Shortly after *West*, the Supreme Court held that the Direct Action Statute was remedial only, did not affect any substantial rights under the insurance contract, and did not impair any obligation under the contract. *Home Ins. Co. v. Highway Ins. Underwriters*, 222 La. 540, 62 So. 2d 828 (1952). In 1988, the legislature amended the Direct Action Statute to add Subsection C, which made any direct action "subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action by the insured[.]" 1988 La. Acts, No. 934, § 1, effective January 1, 1989.[6] By this provision, the third party's rights are no greater than the insured's.

The modern approach is best exemplified by *Gorman v. City of Opelousas*, *supra*. There, the plaintiff sued the City of Opelousas for the wrongful death of her son while he was in city jail; nine months later, in

---

[5] The first three of these cases actually say "fraud or conspiracy," but Gardner has used the phrase "fraud or collusion" throughout his brief.

[6] At the time, the statute was designated as La. R.S. 22:655.

9

response to a motion to compel, the city disclosed that it had an insurance

policy, with Lexington.  The plaintiff amended her petition to join Lexington

as a defendant.  Lexington then moved for summary judgment, arguing that

its policy required the insured to report the claim to the insurer while the

policy was in force; the city had not done so, so there was no coverage.  The

district court granted Lexington's motion, but the court of appeal reversed.

The Supreme Court, however, granted Lexington's writ to address "whether

the Direct Action Statute affords an injured party a vested right that cannot

be taken away because of an insured's failure to report a claim to the

insurer[.]"  Ultimately, the court reinstated the summary judgment, finding

that the plaintiff was not deprived of any rights because the statute "does not

extend any greater right to the injured third party who was damaged by the

insured."  The court refused to modify the "bargained-for exchange between

the insurer and insured."  The court did not even mention *West v. Monroe*

*Bakery*, *King v. King*, or any of the other cases that would appear to confer

greater rights on the injured person than on the insured.

Modern cases have overwhelmingly applied the rationale of *Gorman*,

applying cooperation clauses literally.  *Anderson v. Ichinose*, *supra*; *Hood v.*

*Cotter*, 08-0215 (La. 12/2/08), 5 So. 3d 819; *Courville v. Lamorak Ins. Co.*,

20-0073 (La. App. 4 Cir. 5/27/20), 301 So. 3d 557, *writs denied*, 20-00812, -

00803, -00791 (La. 10/14/20), 302 So. 3d 1100, 1115, 1121; *Resolution*

*Trust Corp. v. Ayo*, 31 F. 3d 285 (5 Cir. 1994).

The evolution from the rule of *West*, *King*, and *Futch* to the rationale

of *Gorman* and the modern cases dovetails with the emergence of the

claims-made and claims-made-and-reported policy as a standard for

professional insurance policies.  In the former, the peril insured against is the

10

occurrence, event, or accident; in the latter, it is the making and reporting of the claim. *Anderson v. Ichinose*, *supra*; *Kansas City S. Ry. Co. v. Wood Energy Group*, *supra*.

Here, the trigger that would activate coverage would be when United or Trinity reported Gardner's claim to Federal, but this never occurred. Because of their failure to report to and refusal to cooperate with Federal, United and Trinity have no coverage under the policies. Gardner, a third-party claimant, has no greater rights than Federal's insureds. La. R.S. 22:1269 C; *Gorman v. City of Opelousas*, *supra*; *Kansas City S. Ry. Co. v. Wood Energy Group*, *supra*.

For this reason, the rubric of "fraud and conspiracy" found in *West*, *King*, and *Futch*, *supra*, is simply not relevant to the analysis here. We would note parenthetically that these cases never specified *whose* fraud or conspiracy would override the terms of the policy. Gardner correctly shows that there is no summary judgment evidence of fraud on his part (apart from the allegations of theft and embezzlement from United and Trinity). He also suggests that United and Trinity would have some motivation to negate their insurance coverage, as this would be the only source available to compensate Gardner should he prevail in his reconvention. However, there is no evidence that they conspired with Federal to accomplish this. The claim of fraud and conspiracy, or fraud and collusion, lacks merit.

Finally, Gardner contends that United and Trinity's breach of the cooperation clause was premised merely on their failure to answer Federal's letters, and that a mere failure to answer letters is not necessarily a refusal to cooperate. At the very least, he contends, the summary judgment evidence does not exclude a genuine issue as to cooperation, as was found in *Williams*

11

*v. Lowe* and *Desadier v. Safeway Ins. Co.*, *supra*. The evidence in *Williams* was that certified letters from the insurer to the insured were returned "unclaimed," leaving open the question whether the insured had moved and never been aware of the attempts to contact her. In *Desadier*, the court found the plaintiff to be "simply ignorant as to the insurance contract and to business transactions in general." By contrast, United and Trinity were professional home healthcare corporations with an obvious command of their insurance needs. Further, the summary judgment evidence shows a series of emails from Federal to its insureds between May 2018 and January 2021, in which the insurer asked for cooperation, advised of the potential denial of coverage, acknowledged the insureds' request for separate counsel, and confirmed its commitment to provide a defense even if there was no coverage. Unlike in *Williams v. Lowe*, there is no showing that emails were inappropriate for the situation or that the insureds simply did not receive them. The claim that Federal's efforts to induce cooperation were somehow inadequate lacks merit. The district court did not err in finding a failure to cooperate that negated coverage under the policies.

### *Failure to report timely*

By his second issue, Gardner contends that the court erred in finding that United and Trinity's failure to report the claim within the reporting period negated Federal's coverage. He reiterates that the applicable law was that stated in *West v. Monroe Bakery*, *supra*, which guarantees an injured party's direct action against an insurer "regardless of a stipulation to the contrary between the insurer and the insured in the policy and regardless of dilatory conduct on the insured's part in giving notice." He contends that when the issue on summary judgment is failure to give timely notice, the

12

fundamental issue is prejudice to the insurer. *Burge v. Northwestern Nat'l Ins. Co. of Milwaukee*, 08-1396 (La. App. 4 Cir. 6/3/09), 14 So. 3d 616, *writ denied*, 09-1501 (La. 10/9/09), 18 So. 3d 1284; *Trosclair v. CNA Ins. Co.*, 637 So. 2d 1168 (La. App. 4 Cir. 1994).

For the reasons already expressed, we decline to apply the principles of older, occurrence policies to modern, claims-made and claims-made-and-reported policies. As with the cooperation clause, courts now apply the timely reporting clause of claims-made-and-reported policies literally. *Gorman v. City of Opelousas*, *supra*; *Kansas City S. Ry. Co. v. Wood Energy Group*, *supra*; *Mansour v. State*, 96-0669 (La. App. 1 Cir. 4/29/97), 694 So. 2d 1096; *FDIC v. Barham*, 995 F.2d 600 (5 Cir. 1993). Notably, the *Burge* and *Trosclair* cases relied on by Gardner involved occurrence policies. The instant record establishes that United and Trinity never provided the required notice to Federal, and this negated coverage.

Gardner further argues that late notice of claim will relieve an insurer of its obligations only in certain circumstances, outlined in *State v. National Union Fire Ins. Co.*, 10-0689 (La. App. 1 Cir. 2/11/11), 56 So. 3d 1236, *writ denied*, 11-0689 (La. 6/3/11), 63 So. 3d 1023.[7] He contends that Federal received actual notice of the claim within 90 days of the end of the policy term and that Federal is solidarily liable with its insureds, and thus there can be no prejudice from the failure of timely written notice. The court would

---

[7] The factors include (1) the time frame specified by the policy for notice, (2) when the insured first discovered the occurrence, accident, claim, or lawsuit, (3) the length of the delay and the time of notice, relative to trial, (4) whether the insured substantially complied with the time and form of notice required, (5) whether it is a direct action claim against an insurer, and when the injured person discovered the existence and identity of the insurer, (6) whether the insurer has suffered actual prejudice because of the delay, (7) the good faith of the insured and the injured person, (8) whether the insured was an average policyholder, inexperienced in the law, and (9) the existence of any special circumstances. *Id.* at 16-17, 56 So. 3d at 1247-1248.

note that in *State v. National Union*, the First Circuit found that under the terms of the state's "Invitation for Bids," written notice to the insurer's broker constituted notice to the insurer itself. In essence, the state's belated notice to the broker fulfilled the obligation to report; the only issue was whether the late report was prejudicial. The same considerations do not apply when the insured made no effort to report the claim. In that situation, the policy will apply, regardless of any potential prejudice. *MGIC Indem. Co. v. Central Bank of Monroe, La.*, 838 F. 2d 1382 (5 Cir. 1988); *Vitto v. Davis*, 09-498 (La. App. 3 Cir. 11/4/09), 23 So. 3d 1048.

The district court did not err in finding that United and Trinity's failure to report the claim to Federal negated coverage under the policies.

### Waiver by Breach of Duty to Defend

By his third issue, Gardner contends that Federal waived its right to assert policy defenses because it failed to provide separate counsel for its insureds. He reiterates that the insurer's duty to defend includes providing separate counsel if it feels its position on coverage is adverse to the insured. *Breazeale v. T.T.*, *supra*; *Emery v. Progressive Cas. Ins. Co.*, *supra*; *Vargas v. Daniell Battery Mfg. Co.*, 93-2282 (La. App. 1 Cir. 12/29/94), 648 So. 2d 1103. Citing the emails, Gardner argues that Federal acknowledged that its insureds had asked for a Mr. Beh to be named their defense counsel, but Federal replied only that it "will consider" his appointment. Gardner concludes that this resulted in a waiver of all policy defenses.

Federal received service of the amended reconventional demand on March 6, 2018. Federal emailed a reservation of rights letter to United on May 3, 2018; this stated that the certificate of service showed that service had been made on Tom Beh, for United. The record contains no response,

14

but a subsequent email from Federal, May 14, 2018, stated that United "requested that Mr. Tom Beh be appointed as your defense counsel," and that Federal would consider this "subject to agreement on fee rates and compliance with [Federal's] litigation management guidelines." The record contains still no response, but a subsequent email from Federal, January 14, 2021, advised that "Federal will continue to provide a defense" subject to the terms and conditions of the policy. Again, the record shows no response, continuing United and Trinity's pattern of complete refusal to participate. In light of Federal's repeated offers to provide separate counsel and an appropriate defense, the district court did not err in finding no genuine issue of material fact that Federal met its policy requirements. United and Trinity's refusal to participate, virtually denying the existence of the litigation, did not negate Federal's performance. The showing is perhaps not as strong as that in *Breazeale v. T.T.*, *supra*, but Federal's conduct did not result in a conflict of interest, which defeated the motion for summary judgment in *Emery v. Progressive Cas. Ins. Co.*, *supra*. The district court did not err in finding that Federal's handling of the claim satisfied its obligation to provide a defense. The assigned errors lack merit.

## CONCLUSION

For the reasons expressed, the judgment is affirmed. All costs are to be paid by Charles Gardner.

**AFFIRMED**.

15